## SEALE v. THE STATE.

1. On the trial of one indicted for a violation of the Penal Code, § 420, prohibiting the running of freight-trains on the Sabbath day, it is not error to admit evidence of any violation of the law prior to the finding of the indictment and within the statute of limitations.

2. The word "destination," as used in the second exception to section 420 of the Penal Code, means the point at which the train finally stops, and not the point at which it crosses the State line.

3. Where, on the trial of the superintendent of transportation of a railroad company for a violation of the code section referred to in the preceding headnotes, it appears that the accused knew of and was responsible for a schedule of the railroad company, the compliance with which necessitated a violation of the law, it is not error of which he can complain that the court charged the jury that he might justify himself by proving that the employees of the company acted in direct violation of his orders and rules, but that " mere general orders and rules would not be a justification under the statute."

4. Nor in such a case is it error to refuse to charge (especially in the absence of a written request) that the accused could not be found guilty if it appeared that he did not know that the train had been run in violation of law, if such was the fact, until after it was so run.

5. An indictment for a violation of the Penal Code, § 420, need not allege that the train for the running of which the accused is charged to be responsible was not within any of the statutory exceptions to that section. Allegations to that effect are mere surplusage, and need not be proved to warrant the conviction of the accused.

6. Upon a review of the case of *Jackson* v. *State*, 88 *Ga.* 787, the same is reaffirmed.

Argued January 17, — Decided January 28, 1905.

Indictment for running freight-train on Sunday. Before Judge Kimsey. Habersham superior court. November 30, 1904.

*John J. Strickland*, for plaintiff in error.
*W. A. Charters*, solicitor-general, contra.

CANDLER, J. The accused was superintendent of transportation of the Southern Railway Company; and the indictment charges that on the 14th day of June, 1903, which was Sunday, he caused a freight-train of that company to be run in the county of Habersham, "the said freight-train being then and there drawn and pulled by an engine numbered 289; the said freight-train not having one or more cars loaded with live stock and delayed beyond the schedule time; and said freight-train not running over said road on Saturday night on a schedule fixing its time of arrival at destination according to said schedule by which it started not later than eight o'clock Sunday morning; and said freight-train not being a special fruit, melon, or vegetable train, the cars of which contained no other freight except perishable fruits, melons, vegetables, fresh fish, oysters, fresh meats, live stock, and other perishable goods of a like nature; and the said freight-train not being a train on a road having its terminal in another State and not running over 30 miles in the State of Georgia." It was undisputed that the train for running which the accused was indicted left Atlanta on Saturday night, the schedule time of its departure being 11:40 p. m., that it was bound for Greenville, S. C., at which point it was due to arrive, under its schedule, at 10:50 a. m. Sunday. It was due to reach Toccoa, in Habersham county, at 5:55 a. m. Sunday, but on the occasion under investigation it arrived at that point behind time. Whether its arrival in Toccoa was before or after eight o'clock Sunday morning is a question as to which the evidence is in conflict, but under the view we take of the case this point is immaterial. Upon arriving at Toccoa the

train was put on a side-track and was not moved again until after twelve o'clock Sunday night.  The accused was found guilty. He moved for a new trial, which was refused, and he excepted.

1. Error is assigned upon the admission, by the court below, of evidence to the effect that the railroad company of which the accused was superintendent of transportation had run other trains on Sunday in Habersham county during the year 1903.  The objection made to this evidence at the time it was offered was that it "would have the tendency to prejudice the jury against the defendant in the case on trial."  We are clear that this was not a good objection, and that for no reason urged on the trial in the court below should the evidence have been excluded.  It is well settled as a general principle that in the trial of indictments for violations of Sunday laws, "the proof of any Sunday, before the finding of the bill and within the statute of limitations, is sufficient."  Whart. Cr. Ev. (9th ed.) § 106, and cit.  It was not denied that the accused had been superintendent of transportation of the Southern Railway Company during the year 1903, and no objection was made that the evidence admitted referred as well to the period of the year after the indictment was found as before. In the able brief of counsel for the accused it is urged that as the indictment specified the number of the engine which drew the train, the State was confined to proof as to that particular engine; and that evidence as to other offenses in which that engine was not concerned was inadmissible.  No such point, however, appears to have been made on the trial in the court below, and hence it will not be considered here.

2. It is contended by counsel for the accused that the word "destination," as used in the Penal Code, § 420 (2), which provides that the prohibition of the statute shall not extend to "a freight-train running over a road on Saturday night, if the time of its arrival at destination according to the schedule by which it started on the trip, be not later than eight o'clock Sunday morning," means the State line, and not the ultimate stopping-place of the train; and the motion for a new trial complains of certain charges of the court at variance with this view.  It is urged, with considerable plausibility, that it could not have been the intention of the legislature to undertake to deal with the operation of a train after it had passed beyond the State's borders; that the

statute is only applicable to trains in Georgia, and that when a train has passed the Georgia line it has reached its "destination," so far as the Georgia law is concerned. A brief examination of the history of the present legislation against Sunday freight-trains in this State, will, however, suffice to show that this argument is without substantial foundation. The first enactment on the subject was in 1850, when the prohibition against running freight-trains on the Sabbath day was made absolute. Subsequently an exception was made in order to permit trains loaded with live-stock, which should not have reached their destination before the beginning of Sunday, to run on to a stock-pen, where the animals could be fed and watered, but beyond that it could not be run on Sunday. Acts 1873, p. 65. The exception now under consideration was enacted into a statute on February 28, 1874, and recited as a preamble, that, "under the existing laws of this State, many freight-trains have to lie over during the Sabbath day at wayside stations, remote from the families and the churches of employees." It was therefore enacted that "it shall and may be lawful for all freight-trains on the different railroads in this State, running over said roads on Saturday night, to run through to destination: provided, that the time of arrival, according to the schedule by which the train or trains started on the trip, shall not be later than 8 o'clock on Sunday morning." We have, then, clearly expressed, the reason of the law, to enable employees of the railroad company to reach their homes in time to spend Sunday with their families and attend religious services. Bearing in mind this evident object of the law, we hold that "destination" means destination, not the State line; the place where abide the families and where are located the churches of the railroad employees.

3. The court charged that the accused might justify himself by proving that the employees of the railroad company acted in direct violation of his orders and rules, but that "mere general orders and rules would not be a justification under the statute." The portion of the charge which we have quoted is assigned as error. In the view that we take of the law under which the accused was tried, and of the admitted facts, this charge was harmless, even if erroneous. The schedule of the train placed it at its destination after eight o'clock on Sunday morning; and hence it could not, under the law, move a wheel in Georgia after twelve

o'clock Saturday night, unless it came within one of the exceptions of the statute. This schedule was well known to the accused — indeed, he was responsible for it. Therefore, regardless of whether the train reached Toccoa at 7: 45, as claimed by the accused, or at 9, as claimed by the prosecutor, the train had been running in violation of law every moment after twelve o'clock; and it was not claimed that its running and operation after that time were in violation of the orders of the accused.

4. The only remaining ground of the amendment to the motion for a new trial complains that the court failed to charge that the accused could not be found guilty if it appeared that he did not know that the train had been run in violation of law, if such was the fact, until after it was so run. It does not appear that any written request was made to give this charge; but independently of that fact, as we have already shown, it was undenied that the accused knew of the existence of the schedule, which in itself called for the illegal operation of the train after midnight on Saturday night, and consequently he was not entitled to the benefit of such a charge as the one under consideration.

5. The sole question remaining for decision is whether or not the verdict was contrary to the evidence and without evidence to support it, in that the State failed to show, as was alleged in the indictment, that the train in question was not within any one of the exceptions to the prohibitory statute. It is contended by counsel for the accused that it was essential to the validity of the indictment that it allege that the train did not come within any of these exceptions, and consequently that it was necessary to the conviction of the accused that the allegations be supported by proof. In the case of *Herring* v. *State*, 114 *Ga.* 96, Mr. Justice Little, in an exhaustive and elaborate opinion, has dealt fully with the question as to when it is necessary to allege and prove that one accused of crime is not one of a class excepted by law from the operation of the penal statute; and in the course of the opinion (p. 101) he quotes with approval from Wharton on Criminal Practice and Procedure, § 241, where it is declared that the test is practically this: Is it the scope of the statute to create a *general* offense, or an offense limited to a particular class of persons or conditions? In other words, is it intended to impose the stamp of criminality on an entire class of actions,

or upon only such actions of that class as are committed by partic-
ular persons or in a particular way ?    In the latter case the de-
fendant must be declared to be within the class; in the former case
this is not necessary." Judge Little adds: "This reasoning seems
to be sound, affording a practical and reasonable conclusion,
namely: If by the words of a statute particular acts done are de-
clared to be a crime for which punishment is provided, the offense
created is general and applicable to all, and an indictment which
sets out the offense in the language of the statute is sufficient,
notwithstanding there may be matters found in the body of the
statute elsewhere which provide that a given class of persons, or
persons with certain qualifications, shall not be convicted of that
offense, or that certain existing conditions may be a justification
for doing the act set out in the statute.    In such a case the offense
is a complete one as it stands stated, and it is not necessary, in
framing the indictment, to negative the conditions under which
the force of the statute may be avoided.    These are matters of
plea and defense to a general statutory crime."    As we have
already seen, the statute of 1850 prohibited in the broadest terms
the running of freight-trains in Georgia on Sunday.  This act then
became a general statutory crime, and the subsequent enactments
on the subject merely excepted from the operation of the statute
particular classes of trains, or trains run under particular con-
ditions.    Applying the principle ruled in the *Herring* case to the
facts of the case at bar, we are clear that it was not necessary for
the indictment to allege that the train was not within the excep-
tions to the statute; that these allegations when made were mere
surplusage, and that the failure to support them by proof did not
render the conviction of the accused unlawful.    See also the case
of *Kitchens* v. *State*, 116  *Ga.* 847, where the *Herring* case was
followed and approved; *Tigner* v. *State*, 119 *Ga.* 114; 1 Bish. N.
Cr. Proc. § 640.

6. Upon a review of the decision of this court, in the case of
*Jackson* v. *State*, 88 *Ga.* 787, we reaffirm the same.

*Judgment affirmed.    All the Justices concur.*