## UNITED STATES v. 462 BOXES OF ORANGES.

(District Court, D. Colorado. February 21, 1917.)

FOOD ⊂══24—"ADULTERATION"—ORANGES—WHAT CONSTITUTES.

An interstate shipment of oranges, frozen before shipment, which were undergoing decomposition because of the freezing and would ultimately become unfit for food, are adulterated, within Food and Drugs Act June 30, 1906, c. 3915, 34 Stat. 768 (Comp. St. 1916, §§ 8717–8728), and may be condemned, even though the oranges were not harmful, if eaten.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Adulteration.]

At Law. Libel by the United States for the condemnation of 462 Boxes of Oranges on the ground that they were adulterated, in violation of the Food and Drugs Act, which were claimed by Ivan C. McIndoo. Decree of condemnation.

On December 18, 1916, the United States attorney for the district of Colorado, acting upon a report by the Secretary of Agriculture, filed in the District Court of the United States for said district a libel for the seizure and condemnation of 462 boxes of oranges, consigned on December 6, 1916, by S. M. Guthrie, Lindsay, Cal., remaining unsold in the original unbroken packages at Denver, Colo., alleging that the article had been transported from the state of California into the state of Colorado, and charging adulteration in violation of the Food and Drugs Act. The article was labeled:

"Lindsay's Favorite Brand Ivan C. McIndoo. Lindsay, Tulare County, California." Adulteration of the article was alleged in the libel, for the reason that it consisted in part of decomposed oranges.

Thereafter Ivan C. McIndoo, Lindsay, Cal., claimant, filed his answer, denying the allegations in the libel. On February 14, 1917, the case came on for trial before the court, a jury having been waived, and after the submission of testimony it was held that the oranges were adulterated within the meaning of the Food and Drugs Act.

Harry B. Tedrow, U. S. Dist. Atty., and Jno. A. Gordon, Asst. U. S. Dist. Atty., both of Denver, Colo.

Hughes & Dorsey and A. A. Lee, all of Denver, Colo., for defendants.

LEWIS, District Judge (orally).   There is no doubt about the facts in this case, but I think there is question as to whether or not the facts bring the shipment within the terms of the act of Congress. We declined to meet this question heretofore in connection with a shipment of apples; that is, we refused to issue the writ of seizure. The charge was that some of the apples were rotten, but on preliminary inquiry it appeared that many of them were sound—were in good condition for use, and could be readily seen and separated from the unsound. It is pretty difficult to free our minds from the idea of deception in the sale of this kind of fruit in the condition that the evidence shows these oranges are, and yet that element ought to be eliminated, because the act of Congress in no sense undertakes to reach the purpose of the act by bringing within its terms any fraudulent conduct in the sale of the article. You cannot determine the condition of an orange from looking at it as you can an apple. Now the evidence, I take it, does bring the shipment within the literal terms of the act; the oranges were decomposed in the sense that on account of prior freezing they were undergoing a deteriorating change; that is, a large per cent. of them. I presume there is a process of decomposition going on when an apple is passed through the stages of what is popularly called mellowing; it is hard when picked and is kept for several months or weeks before it becomes highly palatable. You would not count that—if that be decomposition—as being within the meaning of the act of Congress, for that is a process purely of nature itself, normal to that fruit.

It is true that freezing does not destroy the wholesomeness, immediately, of fruit—either fruit of this character or other fruits—but it starts the process, which, in a short time, will destroy it for all food purposes; and I conclude from this evidence that would be true in this case of a great per cent. of these oranges. On account of having been frosted they would from that cause alone within a reasonable time become wholly unfit for food purposes; within a time less than required to render them unfit for food if they had not been frosted. There is evidence that they were not hurtful if eaten—nothing poisonous about them—nothing harmful in any degree; but there is also evidence that frosting may cause them to have a bitter taste. However, we must conclude that freezing, as already said, through the necessary processes of nature that immediately follow, would lead to the total destruction of this shipment as a food product. Now, if that be true, is it not decomposition within the meaning of the stat-

ute? There is no doubt about the facts, that these oranges were frozen before they were shipped from California where they grew, and that rendered them increasingly unfit as a food product. From the time they were frozen they became increasingly less wholesome on that account.

I believe that is decomposition constituting adulteration within the statute. I think you expressed the true issue in the case, Mr. Lee, when you said the sole question is whether or not the facts, which are undisputed, bring them within the intent and purpose of the statute. My judgment is that in the sense of the statute they were adulterated when they were seized at Denver on the 18th of December.

You may take a decree of condemnation without costs.