### 25203. GENERAL OIL CO. INC. *v.* CROWE *et al.*

DECIDED JULY 15, 1936.

*Poole & Fraser, Bryan, Middlebrooks & Carter, John A. Dunaway,* for plaintiff in error.

*Etheridge, Belser, Etheridge & Etheridge, Hewlett & Dennis,* contra.

STEPHENS, J.   G. E. Crowe and his two minor children brought suit against General Oil Company and D. D. Shermer for the homicide of the wife and mother, Mrs. Lila Crowe.   It was alleged in the petition that the defendants had jointly damaged the petitioners in the sum of $100,000; that the General Oil Company was engaged in the business of selling kerosene, and Shermer operated a business in which he sold kerosene; that Lila Crowe died on May 16, 1932, at which time she was living in the home of Mr. and Mrs. K. A. Godfrey; that J. H. Houze was a tank-wagon driver and salesman of the oil company; that on or about May 14, 1932, Houze, as agent for the oil company, sold and delivered to Mrs.

E. Y. Harris about ten gallons of a substance which was represented by Houze to be kerosene oil; that Mrs. Harris operated a store and retailed kerosene to the general public; that the substance sold to her by the oil company had been sold to it by Shermer a few days theretofore; that said substance was not in fact kerosene, but was a highly inflammable liquid, which was exceedingly volatile and had a flash point at a much lower temperature than kerosene, to wit, 79 degrees Fahrenheit; that the flash point under the laws of Georgia should not be lower than 115 degrees F., and the use of any inflammable substance for the purpose for which kerosene is customarily used with a flash point lower than 115 degrees F. is attended with the greatest danger, because of the likelihood of an explosion and a resultant fire; that kerosene was customarily used in building fires in charcoal buckets, which custom had obtained in the State for many years, and the defendants should have anticipated that the article sold might be retailed to the public and used for said purposes; that on May 14, 1932, K. A. Godfrey purchased of Mrs. Harris four gallons of said substance, which was placed in a five-gallon oil can and carried to his home; that on the morning of May 16, 1932, Lila Crowe prepared to make a fire on the back porch of said home, in an ordinary charcoal bucket, and after putting the charcoal therein she poured thereon about one-half teacup of the substance from the oil-can, that she struck a match on the side of the charcoal bucket with the intention of lighting the charcoal, but immediately following the striking of the match there was a flash followed by a terrific explosion, which was caused from the vapors from said substance which had filled the surrounding air; that the explosion set fire to the house and to the clothing and person of Lila Crowe and burned her body so severely that she died on the same day; that she was a strong and able-bodied woman of the age of twenty-five years, a housewife caring for her husband and minor children, and the value of her services as such was at least $100 per month; that this suit is brought for the husband and said minors for the full value of the life of said Lila Crowe; that deceased was in the exercise of ordinary care and did not know of the dangerous character of said liquid, nor had she been warned thereof; that the sale of such a highly inflammable liquid was in violation of the laws of Georgia; that the defendants, and each of them, were grossly negligent, and their negligence was the proxi-

mate cause of the death of said Lila Crowe; and that the defendants were negligent in selling said substance as kerosene, in selling a substance to be used as kerosene with a flash point lower than 115 degrees F. in violation of State law, and in selling a substance for kerosene which was exceedingly volatile and highly inflammable and which was wholly unsuited for the purposes for which kerosene was customarily used.

The defendants filed separate answers. The General Oil Company denied that it had damaged the plaintiffs. It alleged that whatever kerosene it sold was obtained from Shermer as kerosene and not as any other substance, and it did not sell as kerosene a substance not in fact kerosene; that kerosene with a flash point of 115 degrees or above can cause an explosion when not used in a proper manner, as by pouring over a hot fire or pouring over a charcoal bucket previously heated, so that the temperature of the kerosene is raised and comes in contact with a flame or spark; that on May 16, 1932, Lila Crowe, while at the home of her sister-in-law, poured some kerosene on a charcoal bucket with live coals thereon, which vaporized the kerosene and caused it to catch fire and ignite her clothing, as a result of which she died the same day. It was denied that her services were worth $100 per month; that she was in the exercise of ordinary care and did not know the dangerous character of the liquid; that the sale of such highly inflammable and explosive liquid was in violation of the laws of Georgia; that the negligence of the defendants was the proximate cause of the death of Lila Crowe; and that the company bought from Shermer knowingly any substance other than kerosene within the limits of the law. This defendant denied the allegations of negligence in so far as they relate to it; and further answered, that during May, 1932, it was in a small way engaged as a middleman in the business of selling kerosene to grocery stores and meat markets; that what kerosene was dealt with during that period was purchased as kerosene in good faith from Shermer, who was a wholesaler and imported in tank-cars into this State kerosene which was stored in his private stationary tanks at his place of business, and when this defendant desired to purchase from Shermer kerosene for the purpose of reselling the same to stores and markets, it sent its tank-wagon to Shermer and bought from him small quantities of kerosene, not over one hundred and twenty gallons at a

time, which was represented by Shermer to be kerosene, on which representations this defendant relied, there being nothing connected with the same to put it on notice at any time that it was not receiving anything other than kerosene as prescribed by law; that the kerosene so purchased had every appearance of kerosene, smelled like kerosene, and was delivered by this defendant as kerosene, and in doing so this defendant acted in good faith at all times and was in the exercise of ordinary care; and that it did nothing illegally, negligently, or otherwise to contribute to or bring about the death of Lila Crowe.

Shermer filed an answer which was practically a complete denial of the allegations of the petition. To this answer an amendment was filed which need not be set out, since there are before us no exceptions by this defendant. After a verdict for the plaintiffs in the sum of $13,041.67, the General Oil Company Incorporated made a motion for new trial on the general grounds, which later was amended by the addition of 18 special grounds. The motion was overruled, and the movant excepted. To the bill of exceptions Shermer was made a party defendant in error.

The statute of August 20, 1927 (Ga. L. 1927, pp. 279 et seq.), relating to petroleum products, contains the following provisions: "Section 1. The word 'kerosene' shall embrace and include kerosene and other products of petroleum under whatever name designated, used for illuminating, heating, or cooking purposes. . . Section 4. The sale or offering for sale of all such gasoline and kerosene as hereinbefore enumerated, and designated, used, or intended to be used for power, illuminating, cooking, or heating purposes, when sold under whatever name, which shall fall below the standard hereinafter provided, is hereby declared to be illegal, and same shall be subject to confiscation and destruction by order of the comptroller-general. . . Section 6. When gasoline or kerosene is shipped into the State of Georgia in any manner whatever, the manufacturer, refiner, or jobber shall promptly give notice to the comptroller-general of the date of shipment and shall furnish a sample of not less than eight ounces of the gasoline or kerosene shipped and labeled, giving the tank-car number. . . Section 8. . . It shall also be a misdemeanor for any manufacturer, jobber, wholesaler, or vendor to sell, offer, or expose for sale any kerosene oil for use or intended to be used for heating, cooking or power

purposes, which does not comply fully with the following distillation test: . . The flash point shall not be lower than 100° F. . . The comptroller-general may from time to time change these specifications to agree with those adopted and promulgated by the United States Government Bureau of Mines;" etc. Code, §§ 73-209, 73-212, 73-214, 73-9904, 73-216 (2, 7). Proof was made that the comptroller-general in 1929 raised the flash point of kerosene from 100 degrees to 115 degrees F.

■ The first special ground of the motion for new trial complains that the court, in charging the jury on section 8 of the petroleum-products statute, used this language: "and if you should further believe from the evidence that the oil was sold by the defendants or either of them as kerosene oil to be used in the manner and way in which kerosene is usually used, then you would be authorized to find that the law was violated," etc. It is contended that this was an error harmful to the defendant, in that the court should have charged that the sale would be a misdemeanor if the oil was sold "for use or intended to be used for heating, cooking, or power purposes." It appears that the portion of the charge complained of followed immediately after a recital by the court of the exact words of the statute. Construing these instructions together, the words "in the manner and way in which kerosene is usually used" meant nothing different from the expression "for heating, cooking, or power purposes." Both the court and the jury have the right to take notice of the ordinary uses of such a familiar article as kerosene. See *Roberts* v. *State, 4 Ga. App.* 207, 216 (60 S. E. 1082). Certainly it is not reversible error for the court to speak of cooking, heating, and power as the usual uses of kerosene. The same matter is brought up again in grounds 5, 11, and 18 of the motion.

■ The second ground complains that the court erred in charging the jury as follows: "The defendants and each of them also contends that Mrs. Crowe failed to exercise ordinary care to protect herself against any negligence that may have occurred on the part of the defendants." The criticism is that this charge allowed the jury to believe that this defendant admitted that it was guilty of negligence. Such is not the effect of the charge. In the early part of the charge the judge correctly recited at great length the contentions of the General Oil Company, including its denials of negli-

gence, and told the jury that if they believed these contentions of the oil company and that it was not negligent as charged in the petition, there would be no liability on it. Furthermore, there is appended to this ground a charge which the oil company requested of the court, beginning with the words "The defendant General Oil Company contends that the said Mrs. G. E. Crowe was guilty of contributory negligence and failed to exercise ordinary care, because," etc. Then follow allegations that Mrs. Crowe poured the kerosene into a charcoal bucket which had been heated by a previous fire and which contained live coals. The record shows that the court gave this requested charge. Where a defendant denies that he was negligent and at the same time pleads contributory negligence by the plaintiff, he takes a somewhat equivocal position, but does not thereby admit negligence of his own. The charge complained of was not erroneous.

■ The third ground alleges error in charging the jury that if they found the defendant oil company violated the law with respect to selling kerosene, "and you further find that this violation was the proximate cause or one of the proximate causes of the damage alleged to have been sustained by the plaintiffs, the court charges you that it would be no excuse or defense of the defendant to show that it did not know that the substance sold was dangerous or unsuited for the use for which kerosene is customarily used. It is contended that this charge was error, because there can be only one proximate cause of an event, and because the jury may have thought that the negligence of the deceased was one of the proximate causes of her death; yet "the jury was allowed to place the blame on this defendant even though there had been a half dozen contributing causes for which this defendant may not have been liable." It seems that the court was keeping in mind the fact that the suit was against two defendants who made separate sales of the alleged dangerous substance, and alluded somewhat inaccurately to these sales as "proximate causes" instead of concurrent causes. See *McGinnis* v. *Shaw*, 46 *Ga. App.* 248 (167 S. E. 533). This can not be held to be reversible error in connection with other parts of the charge, one of which was that "if the damage alleged to have been suffered by the plaintiffs is only the possible result of an alleged tortious act of the defendant, . . but some other contingent circumstances preponderated necessarily in the cause of the

injury, such damage would be too remote to be the basis of a recovery against the oil company." The court further charged: "If the defendants were not negligent in any of the particulars charged in the declaration, or, if they were negligent, such negligence did not cause the injury of the deceased, or if the only cause of the injury of the deceased was the negligence of the deceased herself, or if the deceased and the defendants were equally negligent, or if the deceased failed to exercise ordinary care to have avoided the consequences of the defendants' negligence, if any, then there would be no recovery in the case."

■ Complaint is made in the 4th and 6th grounds that the court charged incorrectly on the measure of damages and the mode of ascertaining the full value of the life of the deceased. These objections are without merit. *Standard Oil Co.* v. *Reagan,* 15 *Ga. App.* 571 (5-10), 589 (84 S. E. 69).

■ The 7th ground alleges error in that the court did not give in charge section 4512 of the Code of 1910 (1933, § 105-2011), which provides that where several trespassers are sued jointly, the plaintiff may recover, against all, damages for the greatest injury done by either; but the jury may in their verdict specify the particular damages to be recovered of each, and judgment in such case must be entered severally. In this connection it is claimed by the plaintiff in error that when the jury made a request for a recharge and referred specifically to the matter of returning a verdict against both defendants in different sums, the court erred in instructing them that they could not return verdicts for different amounts against the defendants and in limiting the jury to one verdict for a definite amount against both defendants. Council for the defendants in error reply to this contention by saying that the present action is not for a property right, but is an action in tort, citing *Atlantic, Valdosta & Western R. Co.* v. *McDilda,* 125 *Ga.* 468 (54 S. E. 140, 114 Am. St. R. 240) ; and that section 105-2011 does not apply to an action for a personal tort, citing *McCalla* v. *Shaw,* 72 *Ga.* 458, *Glore* v. *Akin,* 131 *Ga.* 481 (62 S. E. 580), and *Lee* v. *Central Ry. Co.,* 147 *Ga.* 428 (94 S. E. 558, 13 A. L. R. 156). It is evident that section 105-2011 is not applicable to the present case, because the alleged acts of negligence were identical, the oil sold by the oil company to Mrs. Harris being the same oil in part which was sold by Shermer to the oil company and the alleged

result of these sales being the same, to wit, the death of Mrs. Crowe. Necessarily the measure of damages was the same as to both defendants; the full value of the life of the deceased. The jury could not put different values on her life. Ground 10 is a repetition of ground 7.

■ Grounds 8 and 9 may be disposed of together. It is contended that when the jury asked for further instructions "as to the verdicts to be returned," and the court charged as to the form of the various verdicts which could be rendered, the court ought to have again charged the law as to equal negligence of the defendants and the deceased, as to comparative negligence, and as to want of ordinary care. These grounds do not recite the entire colloquy between the foreman of the jury and the judge, because, as appears from the record, after the court had recharged as to the forms of the verdict, the foreman said, "There seems to be some question, your honor, as to your charge with respect to our returning a verdict against both defendants in different sums." Thereupon the court gave the charge complained of in ground 7. The foreman asked, "It must be equal amounts?" The court replied, "It would be so many dollars." This shows that the jury, at that time, asked additional instruction on only one point of law in the case. It was not incumbent on the court to repeat the entire charge or any instruction not pertinent to the request of the jury.

■ The 11th ground contains two complaints. One is that the court charged that "the statute declares that oil with a flash point lower than 115 degrees Fahrenheit shall not be sold or offered or exposed for sale as kerosene." This quotation is only a part of a sentence which subsequently said: "if you should further believe from the evidence that the oil was sold by the defendants or either of them as kerosene oil for use or intended to be used in the manner and way in which kerosene is usually used, then you would be authorized to find that the law was violated, . . and the violation would amount to negligence per se," etc. Moreover, immediately before this charge the court had correctly recited the language of the statute. This complaint is without merit. The other complaint in this ground is that the court charged that "it would be no excuse or defense of the defendant General Oil Company to show that it did not know that the substance sold was dangerous or unsuited for the use for which kerosene oil is customarily used. It

would likewise be no defense for it to show that it did not know that the substance would flash at a temperature below 115 degrees Fahrenheit." It is insisted in this ground, and in other grounds of the motion, that the vendor of kerosene which did not comply with the requirements of the statute could not be convicted of a misdemeanor if he acquired the oil without any knowledge of or reason to suspect its inferior quality and sold the same in good faith, believing that he was selling good kerosene. This contention can not be sustained. The statute does not define the offense as "knowingly" to sell. By its terms the bare sale is to be punished. In construing a somewhat similar statute, the Supreme Court held: "Where the law prohibits the sale of oil below a certain test, and provides a plain and simple mode of making such test and determining the salableness of the oil, ignorance is no excuse for dealer who sells oil below the prescribed test." *Downing* v. *State*, 66 *Ga.* 160. Much of what was said in the opinion in that case is applicable to the present statute. It is true that the Code, § 26-201, defines a crime or misdemeanor as "a violation of a public law, in the commission of which there shall be a union or joint operation of act and intention, or criminal negligence." This section, however, does not make guilty knowledge indispensable to a conviction of crime. There are certain cases, especially those which relate to the public safety, in which the commission of the prohibited act, whether knowingly or not, makes the actor guilty. In a case in which a defendant was accused of violating the prohibition law, it was held no defense to show that he sold the liquor in good faith, and in ignorance that it was intoxicating. *Ware* v. *State*, 6 *Ga. App.* 578 (65 S. E. 333). The opinion in this case follows what appears to be the weight of authority, and says "Scienter is not an element in the offense before us; nor is it an indisputable element of that intent referred to in section 31 of the Penal Code" (1933, § 26-201). This case was cited in *Bruce* v. *State*, 48 *Ga. App.* 854 (174 S. E. 199). The principle therein decided clearly applies to the case at bar. There are also specific decisions from other States, to the effect that the defendant in a suit for damages growing out of an illegal sale of illuminating oil can not defend by showing that he did not know that the oil was dangerous or that it did not come up to the test required by the statute regulating its sale. Hourigan *v.* Nowell, 110 Mass. 470; Standard Oil Co. *v.*

Robb, 85 Ind. App. 21 (149 N. E. 567); LaFayette *v.* Bass, 122 Okla. 182 (252 Pac. 1101). It follows that the court did not err in the charge complained of.

■ Ground 12 complains that the court delivered contradictory instructions with respect to the liability of the defendant oil company. In its charge the court recited at length various contentions of the oil company, including an allegation that the kerosene sold to Mrs. Harris was good kerosene, and an allegation that the deceased did not exercise ordinary care and that her negligence was the proximate cause of her death, and the allegation of the oil company that it sold the oil in good faith without any knowledge or reason to suspect it to be of inferior quality; and then the court said, "If you believe these contentions of the defendant and that it was not negligent as charged in the plaintiff's petition, and if you find this to be true, then there would be no liability on General Oil Company." Afterwards the court gave the charge complained of in ground 11, supra. There is no inconsistency between these charges.

■ Ground 13 complains that the court refused a request to charge in these words: "Where two or more persons or corporations, acting independently, without concert, plan, or other agreement, inflict damage or cause an injury to another person, the persons inflicting the damage are not jointly liable therefor, but each is liable for his proportion only of the damages." It was not error to refuse this request. Its language was used in the case of *McGinnis* v. *Shaw,* 46 *Ga. App.* 248 (167 S. E. 533), where the court went on to say: "But it is also true that, even though voluntary, intentional concert is lacking, if the separate and independent acts of negligence of several combine naturally and directly to produce a single injury, they may be sued jointly, despite the fact that the injury might not have been sustained had only one of the acts of negligence occurred," and "where two concurrent causes operate directly in bringing about an injury, there can be a recovery against either one or both of the responsible parties." And the decision in the case, headnote 2, said that recovery could be had against either or both of the responsible parties. It was not error to refuse the request set out in this ground, because it was not applicable to the case, since the defendants cooperated in putting the bad oil in circulation. At any rate, the request could not properly have

150

been given without the qualification in the opinion which is quoted above.

The fourteenth ground complains of the court's refusal of a request to charge to the effect that it was not the duty of the oil company to inspect the oil bought from Shermer, before selling to Mrs. Harris, etc. For reasons hereinbefore set out, this contention was wholly immaterial, and it was not error to refuse the request.

The fifteenth and sixteenth grounds are controlled by the ruling in ground 7, supra, as they reiterate the claim that the oil company purchased and resold the oil without knowing or having reason to believe that it was of inferior quality or was of the kind forbidden to be sold by the statute. Counsel for the plaintiff in error lay stress on the provision in the statute requiring importers of oil into this State to submit to the comptroller-general samples for analysis, and infer therefrom that dealers are not required to make any test or to exercise any diligence to ascertain the quality or grade of the oil which they sell. This inference is not warranted. The test of importations is only one of the safeguards provided in the law. It does not supersede the others. Section 7 of the act of 1927 allows any purchaser, for his own use, to submit samples to the comptroller-general to be tested or analyzed by the State oil chemist. Section 13 makes it the duty of the comptroller-general to collect samples of gasoline, kerosene, or other illuminating, cooking or heating oils and have them analyzed by the State oil chemist. Ga. L. 1927, pp. 282, 285. There was evidence in this case that about April 16, 1932, the comptroller-general took samples from Shermer's stock and had them analyzed, with the result that about 15,000 gallons of kerosene were condemned. On May 9, another investigation resulted in the condemning of about 4000 gallons. It seems likely, if the General Oil Company had made inquiry at the office of the comptroller-general, that it would have obtained information which would at least have put it on its guard in supplying its customers with oil bought from Shermer.

Ground 17 complains that the court, in charging on comparative negligence, did not differentiate the negligence of one defendant from that of the other defendant, but merely charged: "If the deceased and the defendants were equally negligent, there could be no recovery in the case." This contention is without merit, because the negligence of the defendants, if any, was pre-

cisely the same, selling the same kerosene that was below the legal standard. There was no basis for the differentiation claimed, and there was no request for such a charge. Ground 18 is a repetition of grounds 1, 3, and 11.

■ As to the general grounds of the motion for new trial, the evidence was sufficient to authorize the jury in concluding that the kerosene sold by the General Oil Company to Mrs. Harris had a flash point lower than 115 degrees Fahrenheit, that it was sold for use or intended to be used for cooking or heating purposes, and that the deceased Mrs. Crowe did not fail to use ordinary care in attempting to employ the oil as she did. As to the intended use of the oil, although no statement was made either by the seller or by the buyer at the time of the sale, it is a familiar principle that a party is presumed to have intended the natural and probable consequences of his act. The Code, § 26-202, expressly provides that intention may be manifested by the circumstances connected with the perpetration of the offense. This court has held that the intention with which an act is done is peculiarly a question for the jury.

What was said by this court in the case of the codefendant Shermer, in which he excepted to the overruling of his motion for a new trial (*Shermer* v. *Crowe*, 53 *Ga. App.* 418, 186 S. E. 224), is by reference adopted here. The evidence supported the verdict, and no error appears. The court did not err in overruling the motion for a new trial.

*Judgment affirmed. Sutton, J., concurs. Jenkins, P. J., disqualified.*