DONALDSON *v.* GREAT ATLANTIC AND PACIFIC TEA
COMPANY *et al.*

No. 12360.   September 27, 1938.   Rehearing denied October 15, 1938.

*Burress & Dillard* and *Hewlett & Dennis,* for plaintiff.

*Bryan, Middlebrooks & Carter, Hirsch &.Smith, A. S. Clay,* and *E. P. Rogers,* for defendant.

BELL, Justice. The sections of the Code referred to in the foregoing questions were all taken from the act of the General Assembly approved August 21, 1906, commonly known as the pure-food and drug act. Ga. L. 1906, p. 83. It appears from the caption and other portions of this act that it had the purpose, among others, of preventing adulteration, misbranding, and imitation of foods sold and intended for human consumption, under penalties for its violation. Section 4 contained several subsections, defining adulteration. This section is now contained in the Code, § 42-109. So far as material in this case, it is declared by this section that an article of food shall be deemed to be adulterated: "7. If it consists in whole or in part of a filthy, decomposed, or putrid animal . . or any portion of an animal unfit for food, whether manufactured or not." Section 42-115, derived from section 6 of the original act, is as follows: "No dealer shall be prosecuted under the provisions of this title when he shall establish a guaranty signed by the wholesaler, jobber, manufacturer, or other party residing in this State, from whom he purchases such articles, to the effect that the same are not adulterated or misbranded within the meaning of this title, designating them. Said guaranty, to afford protection, shall contain the name and address

of the party making the sale of such articles to such dealer, and in such case the said party shall be amenable to the prosecutions, fines, and other penalties which would attach, in due course, to the dealer under the provisions of this law." Section 42-9901, taken from section 1 of the act, declares that any person violating any of the provisions of this statute shall be guilty of a misdemeanor, and prescribes penalties. The act of 1906 from which the foregoing provisions of the Code were taken is purely a criminal statute, and does not purport to give a right of action to individuals. There is, however, another law (Code, § 105-1101) which provides as follows: "Any person who knowingly or carelessly sells to another unwholesome provisions of any kind, the defect being unknown to the purchaser, by the use of which damage results to the purchaser or his family, shall be liable in damages for such injury." The provisions of this section have been carried in all of the Codes of this State, beginning with the Code of 1863, § 2945. This section refers to private rights, and is based on common-law principles; although it may not state the basis of liability precisely as it existed at common law; that is, whether it was negligence or breach of implied warranty. Any variance, however, is not material in the present inquiry, and for convenience we may refer to this section as stating the common-law rule. Compare Friend v. Childs Dining Hall Co., 231 Mass. 65 (120 N. E. 407, 5 A. L. R. 1100); Temple v. Keeler, 238 N. Y. 344 (144 N. E. 635, 35 A. L. R. 920); Nisky v. Childs Co., 103 N. J. L. 464 (135 Atl. 805, 50 A. L. R. 227); F. W. Woolworth Co. v. Wilson, 74 Fed. (2d) 439 (98 A. L. R. 681); Cushing v. Rodman, 82 Fed. (2d) 864 (104 A. L. R. 1023); 26 C. J. 751, 783; 11 R. C. L. 1094, 1119.

We proceed now to a consideration of the first question propounded. It appears that the petition alleged that the defendant, a retailer of meats, sold "some pig's liver to the plaintiff's daughter, which on the same day was cooked and eaten by [the plaintiff's family], all of whom became suddenly ill on the following morning; that at the time of being sold the liver was in a deleterious and unwholesome condition, was contaminated by infectious matter, and was in a decomposed condition and unfit for food, and poisoned the plaintiff; and that the defendant was negligent in not inspecting the liver, in holding it out as fresh and whole-

some when it was not fit for human use, in not warning the plaintiff's daughter or the plaintiff of the unwholesome condition of the liver, and in selling to her daughter for human consumption the liver in the unwholesome condition described, 'which was a violation of the State law.'" The question is whether these allegations were "sufficient to authorize a recovery as for a violation by the defendant of a statutory duty resting upon him, as contained in the provisions of the pure-food law of this State." Code, §§ 42-109, 42-115, 42-9901. Since the "pure-food law" is only a criminal statute and contains nothing to authorize an action for damages by an individual, we would be compelled to answer this question in the negative if it should be understood to inquire whether the plaintiff's action could be construed as *founded* upon this law. The suit, however, appears to be a common-law action for damages resulting from negligence, in which the plaintiff, though relying partly on both the old and the new law, does so only for the purpose of showing a breach of duty, or negligence. At common law the suit would be termed an action of trespass on the case, which is "an action for the recovery of damages, for acts unaccompanied with force, and which in their consequences only are injurious." *Hendrick* v. *Cook*, 4 *Ga.* 241, 260; 28 Am. & Eng. Enc. L. 614; 45 C. J. 716, § 99. Seemingly, it is this general form of action to which the Code refers in the following provision: "When the law requires one to do an act for the benefit of another, or to forbear the doing of that which may injure another, though no action be given in express terms, upon the accrual of damage the injured party may recover." § 105-103. It is not uncommon in actions for negligence for the plaintiff to allege various breaches of duty as constituting negligence on the part of the defendant. The plaintiff may rely upon an act or omission as constituting negligence as a matter of fact under the circumstances, or upon the violation of a statute as amounting to negligence per se or as a matter of law. Furthermore, the facts may be so pleaded as to show negligence of both classes in the same action. *Seaboard Air-Line Railway Co. v. Hood*, 127 *Ga.* 206 (56 S. E. 303); *Louisville & Nashville Railroad Co.* v. *Hames*, 135 *Ga.* 67 (2), 69 (68 S. E. 805); *Southern Railway Co.* v. *Mouchet*, 3 *Ga. App.* 266 (2) (59 S. E. 927); *Western & Atlantic Railroad* v. *Reed*, 35 *Ga. App.* 538, 540 (134 S. E. 137); *Folds*

v. *Augusta,* 40 *Ga. App.* 827 (151 S. E. 685) ; *Central of Georgia Railway Co.* v. *Cooper,* 45 *Ga. App.* 806 (165 S. E. 858).

In view of what has just been said, we construe the question propounded by the Court of Appeals, not as inquiring whether the action should be taken as *founded* on the pure food law, but as asking only whether the petition alleges facts sufficient to show negligence as a matter of law, in the violation of that statute. As thus construed, the question must be answered in the affirmative. While the pure-food law was designed for the protection of the public, and did not in express terms declare other than public duties, the plaintiff as a member of the public for whose benefit it was enacted could invoke its provisions for the purpose of showing negligence as a matter of law, if injured by the violation of a duty so imposed. *Platt* v. *Southern Photo Material Co.,* 4 *Ga. App.* 159 (2) (60 S. E. 1068) ; *Georgia Southwestern & Gulf Railroad Co.* v. *Lasseter,* 41 *Ga. App.* 154, 160 (152 S. E. 267) ; 45 C. J. 729, § 114; 20 R. C. L. 41, § 35. Under the pure-food act (§ 42-109 (7), supra), an article of food is adulterated if it consists in whole or in part of a "filthy, decomposed, or putrid animal . . substance," or of "any portion of an animal unfit for food." The petition alleged that the "pig's liver" purchased from the defendant "was in a deleterious and unwholesome condition, was contaminated by infectious matter, and was in a decomposed condition and unfit for food." These averments were sufficient to show a violation of the duty imposed by the statute not to sell "adulterated" food as defined therein, and reliance upon such breach as constituting negligence per se or as a matter of law; notwithstanding the petition may have contained other allegations to show negligence as a matter of fact. In pleading a cause of action, where a domestic or federal statute is relied on, it is unnecessary to incorporate a statement of the law. *Gainesville Midland Railway* v. *Vandiver,* 141 *Ga.* 350 (80 S. E. 997) ; *Youmans* v. *Georgia & Florida Ry. Co.,* 142 *Ga.* 781 (83 S. E. 784) ; *Atkinson* v. *Hardaway,* 10 *Ga. App.* 389 (6) (73 S. E. 556) ; *Western & Atlantic R.* v. *Meister,* 37 *Ga. App.* 570 (140 S. E. 905). Whatever may be the ordinary signification of the word "adulterated," the statute itself contains the definition applicable in this case. United States *v.* Sprague, 208 Fed. 419; United

States *v.* 462 Boxes of Oranges, 249 Fed. 505; Anderson *v.* United States, 284 Fed. 542.

The first question includes reference to section 42-115. That section does not impose any duty whatever upon a seller of foods, or upon any one. It merely provides that no dealer shall be prosecuted under the provisions of the statute if he shall establish a prescribed guaranty signed by the person from whom he purchased. Under this section a dealer selling food which is adulterated within the meaning of the statute would not violate its provisions, and therefore would not be guilty of negligence per se, if he had obtained the prescribed guaranty; but the guaranty would not relieve him from the liability referred to in section 105-1101, if he is negligent as a matter of fact, in selling unwholesome food by the use of which another is injured. It follows that section 42-115 merely creates an exception to the statute in favor of those who obtain and establish the guaranty; and the plaintiff in this case was not required to negative such exception in her petition, its existence in a particular case being a matter for defense. *Kitchens* v. *State,* 116 *Ga.* 847 (43 S. E. 256); *Hagan* v. *Townsend,* 118 *Ga.* 682 (45 S. E. 478); *Oglesby* v. *State,* 121 *Ga.* 602 (2) (49 S. E. 706); *Seale* v. *State,* 121 *Ga.* 741 (5) (49 S. E. 740). The first question, construed as indicated above, is answered in the affirmative.

■ Questions 2 and 3 are both answered in the affirmative. The definition of an adulterated article of food as contained in section 42-109 (7), supra, is not limited to food in a sealed package.

■ The fourth question refers to a retailer who sells food of the kind described in the petition, without having taken the guaranty prescribed in section 42-115. From what has been said above, "the food described in the petition" may be taken to mean food which is adulterated within the meaning of section 42-109 (7). The question then is whether or not it is necessary, in order for a retailer of such food to be liable to a person made sick by eating it, for the dealer to have had "knowledge of the impurity of the food or to have been wanting in ordinary care in connection with its sale." This question appears to present the chief ground of controversy in this case, and we are not unmindful of its far-reaching importance. Counsel on both sides have discussed the effect of the pure-food statute upon the common-law provisions

contained in section 105-1101, as well as the relative meaning of these laws since the adoption of Codes embracing each of them. Compare Civil Code of 1910, §§ 2103 (7), 2116, 4460; Penal Code of 1910, § 451. From what has been said in the first division, it is our opinion that the pure-food and drug act of 1906 did not in any manner change or repeal the common-law rule as now stated in the Code, § 105-1101; and also that as applied to this case their. relative force and meaning were not affected by the adoption of the Codes of 1910 and 1933. For immediate reference, we quote again the provisions of section 105-1101, as follows: "Any person who knowingly or carelessly sells to another unwholesome provisions of any kind, the defect being unknown to the purchaser, by the use of which damage results to the purchaser or his family, shall be liable in damages for such injury." In a suit for damages against a seller of unwholesome food by the use of which the plaintiff is injured, it is still necessary to prove that the defendant *either* knew of the unwholesome condition of the food or was guilty of negligence in the transaction. But how may such negligence be established? As to civil actions, the only effect of the pure-food act is that whereas *before* its passage an action for damages resulting from negligence could be sustained only by allegation and proof of such negligence as a matter of fact, that is, according to the standard of ordinary prudence as applied to the circumstances, the plaintiff may *now* show negligence as a matter of law by establishing a breach of the statutory duty; or he may rely on both classes of negligence, according to the facts. In other words, the passage of this statute did not affect the nature or basis of the cause of action, but related only to the standard of care by which negligence may be determined. 45 C. J. 720, § 103. "If the lawmaking power, in dealing with a subject involving duties, goes into concrete specifications as to what shall or shall not be done, the court takes judicial cognizance that the precise duty exists, and that a breach of it is negligence. This is called negligence per se, in contradistinction to the wrongs or derelictions that arise from violations of those duties which have received recognition in the law, but which have not been defined, or have been defined only in such general or abstract language that there must be a finding, as a question of fact (usually by a jury), that the particular transaction involves a violation of the duties so im-

posed, before the existence of negligence is to be regarded · as established." *Platt* v. *Southern Photo Material Co.,* supra. In *Elk Cotton Mills* v. *Grant,* 140 Ga. 727, 729 (79 S. E. 836, 48 L. R. A. (N. S.) 656), Mr. Justice Lumpkin quoted from 1 Thompson on Negligence, § 10, as follows: "Where the legislature of the State, or the council of a municipal corporation, having in view the promotion of the safety of the public, or of individual members of the public, commands or forbids the doing of a particular act, . . the general conception of the courts, and the only one that is reconcilable with reason, is that the failure to do the act commanded, or the doing of the act prohibited, is negligence as mere matter of law, otherwise called negligence per se; and this irrespective of all questions of the exercise of prudence, diligence, care, or skill; so that if it is the proximate cause of hurt or damage to another, and if that other is without contributory fault, the case is decided in his favor, and all that remains to be done is to assess the damages." The learned Justice then proceeded to declare that, "while a few cases have held that the violation of a statutory duty is only 'evidence' of negligence, and not negligence per se, such decisions, though rendered by courts of high standing, will not bear the test of reason; and this court has frequently held to the contrary." In *Louisville & Nashville Railroad Co.* v. *Hames,* supra, it was held that "The violation of a penal statute proximately causing an injury is negligence per se, and the court may so instruct the jury."

As we construe the fourth question, it was intended to inquire whether in a case of this type, where a breach of the statutory duty is shown, it is still necessary for the plaintiff to establish that the defendant had actual knowledge of the impurity of the food or that he was wanting in ordinary care as a matter of fact. A proper answer to this inquiry depends upon the standard of the statute, and involves the question whether it would be necessary to show such knowledge or negligence in a prosecution for the penal offense. In a civil case of this kind the plaintiff is not required to establish more, on the issue of negligence, than a violation of the statute, and from the terms of the pure-food act (§ 42-109 (7)), it is clearly apparent that it does not include either knowledge of the impurity of the food or negligence in fact as an ingredient of the offense of selling adulterated food, as therein de-

fined. See, in this connection, *Downing* v. *State*, 66 *Ga.* 160 (4) ; *Ware* v. *State*, 6 *Ga. App.* 578 (65 S. E. 333) ; United States *v.* Sprague, 208 Fed. 419; United States *v.* 13 Crates of Frozen Eggs, 215 Fed. 584; People *v.* Snowberger, 113 Mich. 86 (71 N. W. 497, 67 Am. St. R. 449) ; People *v.* Schwartz (Cal.), 70 Pac. (2d) 1017; City of New Orleans *v.* Vinci, 153 La. 528 (96 So. 110, 28 A. L. R. 1382). The cases last cited were not actions for damages by individuals; but there is an abundance of authority to the effect that in a private action involving negligence in the violation of a penal statute, it is unnecessary to establish either knowledge or actual negligence on the part of the defendant, where these facts are not elements of the criminal offense. *General Oil Co.* v. *Crowe,* 54 *Ga. App.* 139 (187 S. E. 221) ; Kelley *v.* John R. Daily Co., 56 Mont. 63 (181 Pac. 326) ; Portage Markets Co. *v.* George, 111 Ohio St. 775 (146 N. E. 283) ; Mills Restaurant Co. *v.* Clark, 45 Ohio App. 25 (185 N. E. 470) ; Taugher *v.* Ling, 127 Ohio St. 142 (187 N. E. 19) ; Schuler *v.* Union News Co. (Mass.), 4 N. E. (2d) 465; Great Atlantic & Pacific Tea Co. *v.* Hughes, 131 Ohio St. 501 (3 N. E. (2d) 415). All except two of these cases were actions for injuries resulting from negligence in the sale of food. The Georgia case, *General Oil Co.* v. *Crowe,* supra, decided by the Court of Appeals of this State, involved a sale of kerosene oil which did not comply with prescribed test; while the decision in Taugher *v.* Ling (Ohio) related to violation of a drug act. Under the foregoing authorities, which are deemed to be sound, the fourth and last question is answered in the negative.

Nothing to the contrary was actually decided in any of the following cases: *Fleetwood* v. *Swift,* 27 *Ga. App.* 502 (108 S. E. 909) ; *Rowe* v. *Louisville & Nashville Railroad Co.,* 29 *Ga. App.* 151 (113 S. E. 823) ; *McPherson* v. *Capuano,* 31 *Ga. App.* 82 (121 S. E. 580) ; *Copeland* v. *Curtis,* 36 *Ga. App.* 255 (136 S. E. 324) ; *Maddox Coffee Co.* v. *Collins,* 46 *Ga. App.* 220 (167 S. E. 306) ; *Slaughter* v. *Atlanta Coca-Cola Bottling Co.,* 48 *Ga. App.* 327 (172 S. E. 723) ; *Crowley* v. *Lane Drug Stores Inc.,* 54 *Ga. App.* 859 (189 S. E. 380). In none of these cases was there any reference to the pure-food act; and whether under the facts of any one or more of them this statute could have been invoked, these cases can be considered as physical precedents only, with little or no force as authority, in relation to such statute. In

*Armour* v. *Miller,* 39 *Ga. App.* 228 (147 S. E. 184), the petition was construed as attempting to show a violation of the pure-food act only by the addition of poisonous or other deleterious ingredient (§ 42-109 (5)) ; and the allegations were held insufficient for this purpose. There was no ruling to the effect that a violation of the pure-food statute may not be claimed as negligence per se in an action of this kind. Accordingly, neither is that decision contrary to any of the rulings made in the case at bar. It was further held, however, that the petition stated a cause of action for negligence, without reference to the pure-food act. The seller, and not the consumer, brought the case to this court. Therefore the correctness of the ruling last stated was the only question presented to this court, and the decision was affirmed without reference to other questions. *Armour* v. *Miller,* 169 *Ga.* 201 (149 S. E. 698). So far as the decisions by the Court of Appeals in *Parker* v. *State,* 24 *Ga. App.* 267 (100 S. E. 452), and *Brown* v. *State,* 36 *Ga. App.* 119 (135 S. E. 518), may be contrary to the rulings in the instant case, these decisions are disapproved. Such we think is the proper construction of the pure-food statute as related to transactions falling within the terms of section 42-109, notwithstanding the law as thus construed may virtually make a dealer in such case liable as insurer. It is held by some courts, independently of statute, that a dealer in food is bound as insurer, or for a breach of implied warranty, which is about the same thing. What if the defendant here had sold a live pig instead of "pig's liver?" If such had been the transaction, with no agreement excluding implied warranty, and if the animal had been affected at the time with some latent disease diminishing its value, the purchaser could have maintained a suit for a breach of implied warranty, "and this is true notwithstanding the vendor was ignorant of the existence of such defect." *Snowden* v. *Waterman,* 105 *Ga.* 384 (31 S. E. 110). Although the damage in such case might be negligible, the example would seem to illustrate in some measure the correctness of our conclusion in the present case.

While no question as to the validity of the pure-food act is involved in the present inquiry, it may not be amiss to say that so long as the General Assembly keeps within its constitutional power, "the courts have nothing whatever to do with the wisdom, expediency, reasonableness, or justice of a statutory enactment. These

are questions solely for the consideration of the lawmaking department of the government." *Puckett* v. *Young,* 112 *Ga.* 578 (3), 581 (37 S. E. 880). As stated above, the fourth question is answered in the negative.

*All the Justices concur, except Jenkins, J., disqualified.*