4518. ATLANTIC COAST LINE RAILROAD CO. *et al.* v.

McELMURRAY BROTHERS, for use, etc.

This case falls within the well-settled rule announced by the Supreme Court in the case of *Gainesville, Jefferson & Southern Railroad Co.* v. *Edmondson*, 101 *Ga.* 747 (29 S. E. 213), that there can be no recovery against a railway company for damages arising from fire caused by the emission of sparks from one of its engines, where the evidence introduced in behalf of the defendant completely rebuts the presumption of negligence arising from proof of the setting out of the fire.

DECIDED FEBRUARY 4, 1913.

Action for damages; from city court of Richmond county—Judge W. F. Eve. November 1, 1912.

*W. K. Miller,* for plaintiffs in error. *J. C. C. Black Jr.,* contra.

POTTLE, J. The plaintiffs sued the Charleston and Western Carolina Railway Company and the Atlantic Coast Line Railroad Company, for damages alleged to have been caused by fire occasioned by the emission of sparks from an engine of the Atlantic Coast Line Railroad Company while being operated over the tracks

of the Charleston and Western Carolina Railway Company. It was alleged that the engine was not equipped with a proper spark-arrester and appliances to prevent the emission of live sparks, and that the engine was negligently operated, in that an unnecessary amount of steam was applied, causing an unnecessary emission of live sparks. It was further averred that the engine was being operated at an unnecessary and dangerous rate of speed, which unnecessarily caused the emission of live sparks, and that the engineer negligently caused the engine to exhaust at a place at which there was dry grass and where there was more danger of fire being communicated to the plaintiff's property. The theory upon which the recovery was sought against the Charleston and Western Carolina Railway Company was that it permitted the Atlantic Coast Line Railroad Company to operate its engine over the tracks of the Charleston and Western Carolina Railway Company. A demurrer to the petition was overruled, and exception was taken; but as the assignment of error upon this judgment is not insisted upon in the brief of counsel for the plaintiffs in error, it will be treated as having been abandoned. The jury rendered a verdict against both of the defendants, and, their joint motion for new trial having been overruled, they excepted.

Where, in a suit such as the one now under consideration, it is made to appear that fire was communicated to the plaintiff's property by sparks emitted from a passing engine, there is a presumption that the defendant is guilty of the acts of negligence alleged in the petition. This presumption, however, is not conclusive, and may be met and overcome by affirmative proof that the defendant was not negligent as alleged. "Modern science and ingenuity have not yet reached a point where it is possible to propel locomotives by the use of steam in such a manner as to absolutely prevent the emission of sparks of fire in their operation. The law does not require that engines shall be so constructed, equipped, or managed as that no sparks of fire shall escape from them; and even if a fire does originate from a spark thrown out by a locomotive, that of itself does not, without more, render the defendant liable. Negligence must be made to appear." *Gainesville Railroad Co.* v. *Edmondson,* 101 *Ga.* 747-750 (29 S. E. 213, 214). The principles of law applicable to the case were well expressed by the trial judge in his charge to the jury. After charging the law in refer-

ence to the presumption of negligence arising from proof of setting out the fire by the defendants, he added: "If you should find that they had equipped their engine properly and were in the exercise of ordinary care and diligence in the running and managing of the engine, they would not be liable, and you should find for the defendant. The company is not an insurer against fires. That is true, gentlemen, they are only liable for damage caused by their lack of ordinary care and diligence in the operation of their trains. If the jury believes from the evidence in this case that defendants' engine was furnished with a spark-arrester and other proper appliances for the purpose of preventing the escape of fire sparks, of a good character, such as was in general use at the time by railroads, and that such appliances were in good condition, and that the engine was properly operated by a competent engineer, but that nevertheless fire escaped and fell upon the plaintiff's premises and set fire to the field and hay as charged, then your verdict should be for the defendants." These instructions stated the law correctly and were pertinent to the case. *Southern Railway Co.* v. *Thompson,* 129 *Ga.* 371 (58 S. E. 1044); *Atlantic Coast Line R. Co.* v. *Williams,* 5 *Ga. App.* 650 (63 S. E. 671); *Central Railway Co.* v. *Milledgeville &c. Railway Co.,* 138 *Ga.* 434 (75 S. E. 617); *Southern Railway Co.* v. *Pace,* 114 *Ga.* 712 (40 S. E. 723); *Southern Railway Co.* v. *Horine,* 115 *Ga.* 664 (42 S. E. 52); *Alabama Midland Railway Co.* v. *Swindell,* 117 S. E. 883 (45 S. E. 264); *Wrightsville & T. R. Co.* v. *Mullis,* 11 *Ga. App.* 482 (75 S. E. 825). The case turned upon the application of these principles of law to the evidence.

The plaintiffs offered a witness who testified, that he saw live sparks emitted from the engine; that these sparks set fire to inflammable matter upon land adjoining that of the plaintiffs; that "the engine was running pretty fast and making a good big effort and throwing out sparks. It was throwing out sparks. It was throwing out a good many sparks. As to where the sparks lit I will say: Well, one of them lit—it was alive and lit a little closer to my house than the first one did." This witness further testified that, as soon as he saw the fire, he went about 30 yards, to the point where the fire originated, and endeavored to put it out, but could not, that as soon as the engine passed his house, he saw the fire, and that it covered about four feet of land, and that he went to it as

fast as he could and made an unsuccessful effort to extinguish it with brushes. Subsequently the witness was recalled to the stand and testified as follows: "When I said that there were two sparks on two occasions that set out two fires, I meant that there was two fires set out, one on each occasion, but as to the number of sparks there could be quantities. As to whether there was more than usual on this particular day, I will say: Well, I have seen as many on other days, I suppose. It is no new thing for a train to set fire. I have known it done very often." The defendant introduced evidence, which was undisputed, that the engine was equipped with a spark-arrester such as was in general use; that this spark-arrester was new and recently inspected and found not defective in any particular. It further appeared that the train consisted of a number of Pullman cars so connected that there was practically no slack in the train; that just before the sparks were emitted the train stopped at the Savannah river drawbridge, and that it was necessary to put on a full head of steam in order to start the train. There was other testimony introduced that the engine was being operated by an experienced engineer and in a proper manner. There was further evidence in behalf of the defendant that modern science and ingenuity has not discovered an appliance that will absolutely prevent the emission of sparks from a locomotive engine at all times and under all circumstances. The fact that sparks apparently larger than the holes in the netting were emitted was explained by expert witnesses with the statement that the force of the draft sometimes caused several sparks to fuse or weld together after they passed through the netting and before they were blown through the smoke-stack. The undisputed evidence offered in behalf of the defendants completely rebutted the presumption of negligence arising from mere proof of the setting out of the fire. It was contended on behalf of the plaintiffs that the testimony of their witness, that he made an unsuccessful effort to put out the fire, authorized an inference that sparks were emitted in such large quantities as to show that the spark-arrester was defective. We can not agree with this contention. The other testimony of this witness itself negatives the idea that large and unusual quantities of sparks were emitted. It is inferable from his original testimony that only a small quantity was thrown out, and his testimony on this subject when he was recalled was wholly insufficient to meet

the proof offered by the defendants. Having reached the conclusion that the plaintiffs were not entitled to recover against either of the defendants, it becomes unnecessary to pass upon the other assignments of error set forth in the amended motion for new trial.

*Judgment reversed. Russell, J., dissents.*