19021. ARMOUR & COMPANY *v.* MILLER.

Decided February 6, 1929.
Adhered to on rehearing February 28, 1929.

230

*Bennet & Peacock,* for plaintiff in error.

*P. D. Rich, H. G. Rawls, S. B. Lippitt,* contra.

JENKINS, P. J. ■ (After stating the foregoing facts.) It does not appear that the allegations with reference to the State and Federal pure-food laws have any actual bearing upon the case as laid. The instant case is not one of adulteration; it is one of negligence in the preparation and handling of food products. The purpose and intent of subsection 5 of section 2103 of the Civil

Code (1910), and of the very similar provisions of the Federal statute mentioned in the petition, was to define what was meant by adulteration as prohibited by the statute, and the particular subsection 5 of the code-section refers to any "added poisonous or other added deleterious ingredient which may render such article injurious to health." As was said by Judge Sanford (who has since become a member of the Supreme Court of the United States) in the case of United States v. Forty Barrels, etc., 191 Fed. 431, in discussing the very similar provisions of the Federal statute: "I am constrained to conclude that the use of the word 'added', as applied to poisonous and deleterious articles of food other than confectionery, can not be regarded as meaningless." "It was intended to provide that any article of food manufactured and sold in this country in interstate commerce should not be deemed to be adulterated merely because it contained a poisonous or deleterious ingredient, except in the case of confectionery, but that all other articles of food, whether simple or compound, were not to be deemed adulterated on account of the presence of a poisonous or deleterious ingredient unless such ingredient was 'added' to the article of food in question, that is, was an ingredient foreign to its natural or normal constituency." In other words, considering the instant case, the defendant is not charged with selling something as sausage which was not sausage. It is not charged with adulterating sausage by adding a foreign and deleterious substance to be sold as sausage which was in fact not sausage. The charge is that the defendant was negligent in selling sausage which was in fact sausage, but which by reason of the defendant's negligence contained putrid matter such as to render the product unwholesome in the manner described.

■ The plaintiff in error insists that since a manufacturer is not an insurer of the purity and wholesomeness of his food products, the petition must show that some particular agent of the defendant knew that the product contained unwholesome matter, or must show wherein and in what particular respect the defendant was negligent. Counsel rely strongly upon the ruling of the Supreme Court in *Hudgins* v. *Coca-Cola Bottling Co.*, 122 *Ga.* 695 (50 S. E. 974), in which it was held: "1. In an action founded upon negligence, mere general averments of negligence are sufficient as against a general demurrer; but when a special demurrer is filed

raising the objection that the allegations are too general, the particulars of the negligence must be set forth. 2. A plaintiff in an action founded upon negligence is confined to proof of the acts of negligence alleged in his petition, or which constitute the res gestæ. 3. A specification of the particulars of the negligence relied on can not be avoided by an allegation that the plaintiff has been unable to ascertain the particular acts of negligence causing the injury, and that on account of the manner in which the injury was inflicted they were more peculiarly within the knowledge of the defendant than of the plaintiff. 4. General averments of negligence can not be aided by the maxim res ipsa loquitur. This maxim can not be invoked to aid a defective pleading."

The defendant in error relies largely upon the decisions of this court in *McPherson* v. *Capuano,* 31 *Ga. App.* 82 (121 S. E. 580), as followed in *Copeland* v. *Curtis,* 36 *Ga. App.* 255 (136 S. E. 324), and also contends that the petition is sufficient in that it alleges that the defendant was guilty of negligence per se in violating the stated sections of the State and Federal pure-food laws in permitting the tainted and impure substance to become mixed with the other contents of the package. It will be noted that in the *McPherson* case and in the *Copeland* case the question involved was not whether the petition was good as against demurrer, but whether or not the doctrine res ipsa loquitur, as a rule of evidence, could make out the case as laid. It is recognized in both of these cases that a manufacturer is not an insurer of his food products. That such is the rule is plainly indicated by the provisions of section 4460 of the Civil Code (1910) relative to actions against one who "knowingly or carelessly" sells unwholesome food products. It is only in proving his case that a plaintiff may invoke the doctrine of res ipsa loquitur. See also, in this connection, *Rowe* v. *L. & N. Railroad Co.,* 29 *Ga. App.* 151 (113 S. E. 823).

In accordance with what has been said, the case narrows down to whether or not the petition, which is attacked both by general and special grounds of demurrer, specifically charges negligence on the part of the defendant such as would render unwholesome the food product purchased by the plaintiff. For not only is it true that a manufacturer is not an insurer of his food products, and that negligence on the defendant's part must be alleged, but, when required to do so, the plaintiff must set forth what the negli-

gence consisted of, so that a mere general averment that the defendant was negligent in furnishing unwholesome food will not suffice. In the *Hudgins* case, supra, the petition alleged merely that a bottle of coca-cola exploded on account of the negligence of the defendant in improperly manufacturing the coca-cola and putting it in a defective bottle. It was in no wise alleged wherein the bottle was defective, or why the improper manufacture of the coca-cola was such as to cause it to explode. If in the *Hudgins* case there had been allegations setting forth the character of the bottle, such as to indicate subnormal strength, or allegations setting forth the presence in the coca-cola of a substance such as would supply an excessive and dangerous expansive quality, the petition would have been good. *Payne* v. *Rome Coca-Cola Bottling Co.* 10 *Ga. App.* 762 (73 S. E. 1087) ; *Commerce Coca-Cola Bottling Co.* v. *Farabee,* 17 *Ga. App.* 487 (87 S. E. 720) ; *Atlanta Coca-Cola Bottling Co.* v. *Danneman,* 25 *Ga. App.* 43 (102 S. E. 542). Nor in such case would it have been necessary to set forth just how, when, where, why, and by whom the defendant in its manufacture of the product might have committed the particular wrong indicated, since it is the fact of such negligent conduct on its part which is material. In the instant case, which deals with a chemical rather than a physical phenomenon, if the petition had merely alleged that the product was dangerous to health and in fact caused an injury on account of its having been negligently prepared, the petition would have been subject to the same criticism as obtained in the *Hudgins* case; but where, as the petition in fact shows, the injury to the plaintiff's health arose by reason of the defendant's negligently embodying in the product a poisonous, putrid substance, such as could and did cause the illness described as ptomaine poison, it can not be said that the allegations as to negligence were so defective in their nature as to amount to a mere general charge of negligence, and failed to show what the negligence consisted of. To require a plaintiff to set forth with particularity and in detail the how, why, who, and when governing the acts and conduct of the defendant throughout the intricate processes of manufacture, which resulted in the toxic infection of the food product, would call for a manifest impossibility in almost every conceivable instance. As was said by the Supreme Court in the *Hudgins* case, in ruling that a mere general averment of negligence will not suffice when

called upon by special demurrer to specify the particulars thereof: "Of course there are limitations to this rule, and cases arise where the line must be drawn. The plaintiff must not be too general, and the defendant must not be too particular."

A motion for rehearing by the plaintiff in error was granted in the instant case, and in considering the same and the arguments of counsel relative thereto, the opinion as first written is retained in substantially, but not precisely, the form in which it was originally delivered. Counsel for the plaintiff in error take the position that the opinion of the court is inconsistent within itself, in that, while it recognizes that a manufacturer of food products is not an insurer, it nevertheless sustains the plaintiff's petition, which they contend sets forth no particular act of negligence or misconduct. We conceive the gist of their arguments to be that the defendant could not be held liable on a petition which merely alleged that it had negligently embodied in its food product a poisonous and putrid substance, such as would and did cause the injury described as ptomaine poisoning, in the absence of the negligence thus referred to being "described," as called for by the demurrer, since such a general charge of negligence will amount to nothing more than a mere conclusion, and the law will presume that the embodying of such poison within the food product "was innocently and blamelessly done" and was "a mere accident which could not be foreseen or guarded against by the manufacturer." Counsel say that while the petition may show a particular act which caused the injury, it does not show such an act to be an act of negligence, save by the mere nomenclature of calling it such. They insist that it is not possible to demonstrate any real difference between an allegation which merely charges that the defendant sold an unwholesome food product, and an allegation that the product was unwholesome in that the defendant negligently embodied certain putrid matter, the poisonous nature and effect of which was particularly described. This, as far as we are able to see, is a fair statement of the contentions made by the voluminous motion and the arguments of counsel in support thereof. As we see it, if the allegation had been such as that which has just been first mentioned, merely furnishing unwholesome food, it would have been in line with and analogous to the allegation made in the *Hudgins* case, and would amount to nothing more than a statement of a condi-

tion, of a result of an effect which some undisclosed negligence might have brought about; whereas an allegation such as that last mentioned, disclosing what act of negligence it was that brought about such unwholesome condition, and which in turn occasioned the injury complained of, goes further than merely setting forth a condition, a result, an effect, or a conclusion. If in a suit against a railroad company the petition should merely say that the locomotive smokestack was defective, there would be no ground of negligence set forth, but, as was held in *Atlantic Coast Line R. Co.* v. *Davis*, 5 *Ga. App.* 214, 217 (62 S. E. 1022), "to say that a locomotive smoke-stack was so insufficiently constructed that it allowed live sparks of fire to come through describes with legal definiteness a lack in its construction." In *Hubbard* v. *Macon Railway & Light Co.*, 5 *Ga. App.* 223, 226 (62 S. E. 1018), this court used the following language: "Even in pleading it is not necessary that the negligent deficiency be described in structural terms; a deficiency may be sufficiently alleged by stating that the particular contrivance was so constructed or maintained that it gave forth a result which it was designed to prevent, and which such contrivances, as they are usually constructed and maintained, do prevent." In the case of *Charleston & Western Carolina Ry. Co.* v. *Attaway*, 7 *Ga. App.* 231 (66 S. E. 548), this court said: "A defect in a machine may be described by showing that the machine was in such condition that it produced certain definitely described results which a machine not defective would not and should not produce. It is not necessary to describe minutely or particularly the physical appearance of the parts alleged to be defective." See also, in this connection, *Tinsley* v. *Gullett Gin Co.*, 21 *Ga. App.* 512, 520, 521 (94 S. E. 892).

The perhaps more difficult argument which counsel urge appears to us to be that while the petition does show a particular act which caused the unwholesomeness of the food, it does not, as they contend, show such act to be an act of negligence, save by merely calling it such. But how far must a petition go in following the details of negligence back to its Lake Itasca? Where can it ever stop? Putrescence such as produces ptomaine poisoning has no place in food furnished for human consumption, and to say that a poison which would cause and did cause such a particular sort of injury was embodied by the defendant in a food product would

seem to be a charge of negligence, and to charge a particular act of negligence, and would not, because the act was *called* negligence, operate to convert the allegation into a mere conclusion. The alleged act of putting putrid matter in the sausage such as would and did cause the illness known as ptomaine poisoning would seem to be as much an act of negligence as putting bits of broken glass in a bottle containing a beverage. At most, the negligence could only differ in degree. In the case of *Watson* v. *Augusta Brewing Co.*, 124 *Ga.* 121 (52 S. E. 152, 110 Am. St. R. 157, 1 L. R. A. (N. S.) 1178), which was decided by the Supreme Court subsequently to the *Hudgins* case, and which refers to the *Hudgins* case, the ruling as stated in the syllabus is as follows: "A manufacturer who makes and bottles for public consumption a beverage represented to be harmless and refreshing is under a legal duty not negligently to allow a foreign substance which is injurious to the human stomach, such as bits of broken glass, to be present in a bottle of the beverage when it is placed on sale; and one who, relying on this obligation, and without negligence on his own part, swallows several pieces of glass while drinking the beverage from a bottle, may recover from the manufacturer for injuries sustained in consequence." In the opinion the Supreme Court said: "When a manufacturer makes, bottles, and sells to the retail trade, to be again sold to the general public, a beverage represented to be refreshing and harmless, he is under a legal duty to see to it that in the process of bottling no foreign substance shall be mixed with the beverage which, if taken into the human stomach, will be injurious. The case of *Woodward* v. *Miller*, 119 *Ga.* 618 [46 S. E. 847, 64 L. R. A. 932, 100 Am. St. R. 188], is hardly in point; for in that case the manufacturer knew of the defect and fraudulently concealed it from the purchaser. *Blood Balm Co.* v. *Cooper*, 83 *Ga.* 457 [10 S. E. 118, 5 L. R. A. 612, 20 Am. St. R. 324], while differing somewhat as to its facts, furnishes strong reasoning to support the principle announced. The composition of patent or proprietary medicines is usually shrouded in mystery, and it is generally understood that many such remedies contain ingredients which, if taken in sufficient quantities, will produce injurious results upon the person taking them. If, then, one who buys a patent medicine may rely upon the obligation of the manufacturer not to place therein ingredients which, if taken in the prescribed

doses, will injure his health, certainly the purchaser of an alleged harmless and refreshing beverage should have the right to rest secure in the assumption that he will not be fed broken glass. It does not matter that the plaintiff in the present case did not buy the soda-water from the defendant, or that there was no privity of relationship between them. The duty not negligently to injure is due by the manufacturer, in a case of the particular character of the one under consideration, not merely to the dealer to whom he sells his product, but to the general public for whom his wares are intended. On this subject see also *Blood Balm Co.* v. *Cooper*, supra."

It would seem, therefore, from what was said in the *Watson* case, that when negligence is charged on account of the defendant's having embodied in a food product a deleterious poison, which would and did cause a certain described illness, it can not reasonably be said that the petition is silent as to what the negligence consisted of. In the *Watson* case the petition alleged that a retail merchant sold some of the defendant's bottled soda-water to the plaintiff, and that while drinking said soda-water plaintiff swallowed certain pieces of glass without knowing it; that the defendant was grossly negligent in leaving fragments of glass in the bottle, and in offering for sale soda-water containing pieces of broken glass; that the defendant could, by the exercise of ordinary care, have known of the presence of the glass in the bottle, while the plaintiff did not know and had no means of knowing. The defendant demurred on the ground that the petition failed to allege the size or kind of glass, and that *"there is no allegation as to the manner, time, or place of defendant's* negligence." The Supreme Court ruled, however, that there was no lack of the required definiteness as to the time, place, and manner of the defendant's negligence; that the case differs from the *Hudgins* case in that in the *Hudgins* case the petition was entirely silent as to what constituted the negligence complained of, while in the *Watson* case it was distinctly alleged that the defendant was negligent in leaving glass in the bottle when it was filled. It would seem that the instant case and the *Watson* case are very similar, and that the plaintiff in the instant case should not be deprived of his right to sue because he did not, during the course of manufacture, follow the food product throughout the various intricacies of that process so as to "describe" with

particularity and in detail the manner, time, and place, that is, the how, when, and where, of the specific act of negligence charged by the petition. See also, in this connection, *Bradfield* v. *Atlanta Coca-Cola Bottling Co.*, 24 *Ga. App.* 657 (101 S. E. 776); 26 C. J. 783 et seq.

Care has been taken to distinguish the ruling in this case from the rulings in the *McPherson* and *Copeland* cases, supra, and in such cases as *Atlanta Coca-Cola Bottling Co.* v. *Danneman*, supra, and no ruling is now made upon the question whether the doctrine res ipsa loquitur could of itself establish the allegations of the petition as made. Referring again to the *Hudgins* case, it is said that the general rule is that "negligence is never presumed from the mere fact of injury; yet the manner of the occurrence of the injury complained of, or the attendant circumstances, sometimes well warrant an inference of negligence." Accordingly, upon the trial of the case, the doctrine res ipsa loquitur could not be invoked to establish a prima facie case, unless the jury were authorized to find that, under all the attendant proved circumstances, the most reasonable and most probable inference which can be drawn from the nature and character of such an extraordinary event is that it would not and could not have happened had not the defendant been guilty of the particular conduct charged, thereby excluding every other reasonable hypothesis as to how, if the product was in fact infected, it had become so.

*Judgment reversed. Stephens and Bell, JJ., concur.*