27128.  FLOYD *v.* SWIFT & COMPANY.

DECIDED DECEMBER 5, 1938.

*Roy B. Rhodenhiser Jr.,* for plaintiff.
*Jones, Russell & Sparks,* for defendant.

STEPHENS, P. J.  Albert Floyd brought an action against Swift & Company alleging in his petition that the defendant manufactured and packed in a metal container a meat product known as "sausage packed in oil," and placed it on the market to be sold and used as human food; that a can of the sausage and oil weighing 17 pounds was sold to the Cochran Grocery Company, a wholesaler, who would sell it to a retail grocer who would break the seal on the can and sell the contents in small quantities to its customers for human food; that on September 1, 1936, a retail merchant at Danville, Georgia, purchased the can from the grocery company and broke the seal to offer the sausage for sale to his customers; that on September 5, 1936, the plaintiff, who boarded with the retail merchant, ate some of the sausage for breakfast, and in about an hour and a half or two hours after eating it he became very ill of ptomaine poisoning, vomiting numerous times and swooned to unconsciousness and remained unconscious for several minutes; that the plaintiff became sick from eating the sausage which was tainted, unwholesome, poisonous, putrid, and contained ptomaines; that his illness was due to the defendant's negligence for the reason that in the can was a quantity of impure, tainted, poisonous, deleterious,

and unwholesome matter which was permitted by the defendant to become mixed with the other contents of the can; that the defendant packed the sausage in a metal container which was unsuited for the purpose in that a protective coating or lining on the inside of the can was too thin, and absent in many places, and bits of metal were allowed to become mixed with the contents of the can; that the defendant knew, or by the exercise of ordinary care could have known, of the condition of the can and of the sausage, and was negligent in permitting the putrid, tainted, impure, deleterious, unwholesome, and poisonous substance to become an ingredient of the product and in putting the same on the market for sale to the public. Other allegations in the petition need not be recited.

The defendant filed an answer in which it was alleged that the sausage was not sold by it as ordinary non-perishable canned meats are sold, but as any other fresh meat is sold, that is, that the same was to be consumed while still fresh, or preserved as ordinary fresh meats are preserved by proper refrigeration; that printed in large letters on the can was the phrase "Perishable. Keep under refrigeration," and that its only contemplation in making the sale to the grocery company was that the grocery company would keep the sausage under refrigeration before its resale to the retailer, and that the retailer would, upon breaking the seal and offering the contents for sale, keep the same under refrigeration just as said retailer would keep any other fresh meat which he might have on hand for sale; that the retailer after breaking the seal on the can on September 1, left the same open and unprotected in his store, and made no effort to place the same under any kind of refrigeration at a time when the weather was hot and the natural conditions were such that any fresh meat not refrigerated would probably become affected by bacteria and spoiled, that at the time the sausage was sold to the grocery company it was pure and wholesome and contained no deleterious substance, and if the sausage at the time it was eaten was tainted, unwholesome, poisonous, putrid, and contained ptomaine, all such conditions were produced altogether by the negligence of the retailer in failing to refrigerate the sausage, and in handling and keeping it in the manner stated, or by the negligence of the retailer, in conjunction with the negligence of other persons who had no connection with the defendant and for whose acts the defendant is not liable. Other allegations in the answer need not be recited.

"On the trial of the case both parties introduced evidence, at the conclusion of which the court directed a verdict for the defendant, and the plaintiff excepted. The only issues were as to the cause of the sausage becoming contaminated, and whether the illness of the plaintiff was caused by the negligence of the defendant or by some act not attributable to it. The evidence showed substantially the following facts: The sausage was made from wholesome meat, and was properly canned in oil by modern, scientific methods, and it was not shown that the sausage was in any way contaminated or rendered unfit for human consumption before the can or container was opened, on September 1, 1936, by a country merchant to whom it had been sold. It was shown that the merchant opened the can in his country store, in which there were flies and mice, and that the weather at that time was very warm, ranging in temperature from 85 degrees Fahrenheit, maximum, on September 1, 1936, to 93 degrees Fahrenheit, maximum, on September 5, 1936. It was shown that the can bore a label on which was printed, 'Perishable. Keep under refrigeration,' but that the storekeeper did not, after opening the can, keep the sausage under refrigeration, and it was under these conditions and circumstances that the sausage was offered for sale. The evidence showed that the plaintiff boarded with the family of the merchant and there, four or five days after the can had been opened, some of the sausage therefrom was cooked and served, that the plaintiff ate some of it, and that in a short time thereafter he became seriously ill. There was evidence that some of the sausage was sold on September 3, 1936, two days after the can was opened, and one witness testified that he bought some of the sausage on the day the can was opened and became ill after eating it. The evidence did not show, however, that it was purchased immediately after the can was opened.

"There was evidence that in the can some particles of solder were found, and that sometime later, after the can had been opened, small 'pellets' were discovered in the can, the storekeeper testifying that, upon removing oil, which had become solidified, from the can two days after it had been opened, he found in the bottom of the can bits of metal and some green 'pellets.' The evidence showed that these substances would not cause the sausage to become poisonous. One of the witnesses for the defendant testified that the 'pellets' were not harmful, and proceeded to consume some of them

in the presence of the jury. While on the stand the following day he testified that he had not been harmed or made sick by the pellets. The doctor who attended the plaintiff testified that he could not say that the plaintiff's illness was due to metallic poisoning.

"It is contended by counsel for the plaintiff in error that the doctrine of res ipsa loquitur was applicable to the facts of the present case, and that the jury should have determined, under such doctrine, whether or not the defendant's negligence, if any, caused the damage to the plaintiff. 'Where the event is unusual and extraordinary in its nature, *and there is nothing to indicate an external cause,* but the peculiar character of the accident is sufficient within itself to indicate that it must have been brought about by negligence on the part of some one, and where the most reasonable and probable inference which can be rationally drawn from the happening of such an event is that it would not and could not have taken place had not the person charged with furnishing or maintaining the instrumentality causing the accident been guilty of the particular acts or omissions set forth by the plaintiff as constituting the actual cause, then the jury is authorized to apply the rule of evidence known as the doctrine of res ipsa loquitur, in determining whether or not the accident must have been thus occasioned.' (Italics ours.) *Macon Coca-Cola Bottling Co.* v. *Crane, 55 Ga. App.* 573 (190 S. E. 879). 'All that the plaintiff should be required to do in the first instance is to show that the defendant owned, operated, and maintained, or controlled and was responsible for the management and maintenance of the thing doing the damage; that the accident was of a kind which, *in the absence of proof of some external cause,* does not ordinarily happen without negligence.' (Italics ours.) *Chenall* v. *Palmer Brick Co.,* 117 *Ga.* 106, 109 (43 S. E. 443). These cases and others dealing with the question of res ipsa loquitur show that the doctrine is applicable *only in the absence of* evidence as to an external cause of the injury. In other words, where there is some intervention or intermediary cause which produces or could produce the injury complained of, the doctrine of res ipsa loquitur is not applicable. In the present case there was evidence that after the can was opened the sausage was exposed under conditions which might be found to have been the cause of the contamination of the sausage, rather than that it was the negligence of the defendant that caused such damage, and

consequently the rule of res ipsa loquitur was not applicable. The case resolves itself into a determination of whether or not the plaintiff had carried the burden of showing that the defendant was negligent, and whether or not, if negligent, its negligence caused the injury and damage to the plaintiff. Under the evidence we think that a verdict in favor of the defendant was demanded, and that the court did not err in directing a verdict accordingly. The cases cited and relied on in the dissenting opinion, while stating correct principles of law as to the application of the doctrine of res ipsa loquitur, are not applicable under the facts of this case, and do not conflict with the ruling here made."

The above matter in quotation marks represents the opinion of the majority of the court, but I dissent therefrom for the following reasons: "Where an event 'is unusual and extraordinary in its nature, and there is nothing to indicate an external cause, but the peculiar character of the accident is sufficient within itself to indicate that it must have been brought about by negligence on the part of some one, and where the most reasonable and probable inference which can be rationally drawn from the happening of such an event is that it would not and could not have taken place had not the person charged with furnishing or maintaining the instrumetality causing the accident been guilty of the particular acts or omissions set forth by the plaintiff as constituting the actual cause, then the jury is authorized to apply the rule of evidence known as the doctrine of res ipsa loquitur, in determining whether or not the accident must have been thus occasioned.' 'In such a case it would be no answer, when the maxim that the thing spoke for itself is invoked, to say that when the injury resulted the thing was not in the possession, power, or control of the manufacturer' or person furnishing the instrumentality which caused the injury. 'All that the plaintiff should be required to do in the first instance is to show that the defendant owned, operated, and maintained or controlled and was responsible for the management and maintenance of the thing doing the damage,' or supplied the thing for resale to the public; 'that the accident was of a kind which, in the absence of proof of some external cause, does not ordinarily happen without negligence. When he has shown this, he has cast a burden upon the defendant, who may then proceed to show that the accident was occasioned by vis major, or by other causes for which

he was not responsible.'" *Macon Coca-Cola Bottling Co.* v. *Crane,* 55 *Ga. App.* 573 (1 & 2) (190 S. E. 879).

The doctrine of res ipsa loquitur applies in applicable cases only when no inference of negligence arises other than from the happening of the act itself. As expressed by Mr. Justice Lamar in *Chenall* v. *Palmer Brick Co.,* 117 *Ga.* 106 (43 S. E. 443), it applies when the plaintiff proves "that the accident was of a kind which, in the absence of proof of some external cause, does not ordinarily happen without negligence." "The defendant is not freed from responsibility, therefore, by showing that the negligence *might* have been that of an external agency. He must show that he did not act negligently, or that the accident was due to causes for which he was not responsible." *Macon Coca-Cola Bottling Co.* v. *Crane,* supra. The doctrine of res ipsa loquitur is but a rule of circumstantial evidence. As stated in *Cochrell* v. *Langley Manufacturing Co.,* 5 *Ga. App.* 317, 322 (63 S. E. 244), "The doctrine is simply a rule of circumstantial evidence, which permits an inference to be drawn from proved facts. It furnishes a working basis for reasonable hypothetical conjecture, and gives scope for legitimate reasoning by the jury. The philosophy of the doctrine is stated in section 5157 of the Civil Code [Code, § 38-123]. 'In arriving at a verdict, the jury, from facts proved, and sometimes from the absence of counter-evidence, may infer the existence of other facts reasonably and logically consequent on those proved.'" As stated by Judge Powell in *Central of Ga. Ry. Co.* v. *Blackman,* 7 *Ga. App.* 766, 771 (68 S. E. 339), "If the circumstances surrounding the happening of the thing that caused the injury were such as to make the inference that the occurrence was proximately brought about by one or more of the particular acts of negligence alleged more reasonable than any other inference that could be drawn under the circumstances, the jury would be authorized to conclude that the defendant was negligent in the respects alleged. We understand this to be the rule of circumstantial evidence applicable in civil actions. It is sometimes called by the sonorous designation of res ipsa loquitur; but the name is not material, it is only the principle that is important." See 45 C. J. 1198, § 770.

It seems that the doctrine of res ipsa loquitur is that where an act occurs which in the usual course of events would not occur but for some one's negligence, and where under all the evidence ad-

duced the jury can not conclude that it was caused from some act of negligence not attributable to the defendant, that is, where the evidence fails to establish to the satisfaction of the jury that the act was caused by some negligence not attributable to the defendant, but to some other cause, to some one else's negligence, or to vis major, the jury may, from the happening of the act itself, infer negligence on the part of the defendant. It is not a correct statement of the rule, as I understand it, that the doctrine is not applicable if there is present any evidence tending to establish that the act was due to some external cause not attributable to the defendant. It is for the jury, under all the evidence, to determine the cause of the occurrence. The jury, after concluding from the evidence that the occurrence was not the result of, or could not be the result of some external cause, not attributable to the defendant, may then infer from the nature of the act itself that it was due to some negligence on the part of the defendant. As stated by Judge Russell in the case of *Sinkovitz* v. *Peters Land Co., 5 Ga. App.* 788, at page 793 (64 S. E. 93) : "However, the process by which it is to be determined whether the physical facts and circumstances accompanying an injury are such that the act may be said itself to speak the negligence of the defendant is to be worked out by the jury and not by the court. Not only is negligence or diligence, in every case where either is involved, a question solely for the jury, but it is also the prerogative of the jury to say in the first instance whether the evidence adduced to raise the inference of fact,—that an extraordinary and unexplained casualty authorizes an inference that the defendant was negligent, —is sufficient or insufficient for the purpose." In this case Sinkovitz sued Peters Land Company for damages for injuries received by him from glass falling on him from a window in a building belonging to the defendant. It was alleged that the defendant was negligent in that said "windowpane itself was defective and not capable of sustaining the force of the usual windstorms and flurries of wind to be expected in Atlanta, and especially at the place where the Peters building is located," that the windowpane was defective in that the same was too thin and too brittle, and did not have the tension required for its size, and was therefore not capable of sustaining the force of the usual windstorms and flurries of wind to be expected in Atlanta and at this place. In comment-

ing on the evidence in that case, and the application thereto of the doctrine of res ipsa loquitur, Judge Russell stated that: "We think, however, that the evidence is sufficient to authorize the jury to infer, although they would not be required to draw such an inference, either that the windowpane had not been properly placed in the sash originally, or that the windowpane was defective and not capable of sustaining the force of such winds as are usual in the locality in question. On the other hand, the inference may be drawn, from the testimony, that the fall of the glass was due *to an unusual hurricane.* But no one can say which inference would be drawn by the jury, . ." (Italics mine.)

As stated by Justice Cobb in *Palmer Brick Co.* v. *Chenall,* 119 *Ga.* 837, at 843 (47 S. E. 329) : "Under our system, where every question of negligence is left for determination by the jury, even in cases where the maxim under consideration [res ipsa loquitur] is applicable, the judge should not charge the jury that there would be an inference of negligence from a given state of facts, but should instruct them in clear and unequivocal terms that negligence must be proved, and it is for them to consider whether the manner of the occurrence and the attendant circumstances are of such a character that they would, in their judgment and discretion, be authorized to draw an inference that the occurrence could not have taken place if due diligence on the part of the master had been exercised. And they should also be instructed, that, while they are not required by the law to draw any inference of negligence from the matter, still it is within their province to determine whether the circumstances are such that such an inference might be properly drawn. If in a given case the jury see proper to draw an inference of negligence from the manner of the occurrence or the attendant circumstances, the drawing of this inference is not necessarily to result in a finding in favor of the plaintiff. *It imposes upon the jury the duty of making further inquiry as to whether this inference has been overcome by a satisfactory explanation."* (Italics mine.)

Where, either under the evidence, or for lack of evidence, all causal connection between the occurrence and any act not attributable to the defendant is eliminated by the jury, and it is established to their satisfaction that the occurrence was not caused by some act not attributable to the defendant, such as one which may have

arisen after the instrumentality causing the occurrence or accident had left the defendant's possession or control, the doctrine of res ipsa loquitur may be applied by the jury to establish causal negligence against the defendant. In *Payne* v. *Rome Coca-Cola Bottling Co.*, 10 *Ga. App.* 762 (73 S. E. 1087), the plaintiff had brought suit against the bottling company for damages to him caused by the explosion of a bottle containing coca-cola which had been put on the market by the defendant. It appeared that the plaintiff's brother acquired the bottle from a person by the name of Cook, who bought it from a person by the name of Barnett, who bought it from the defendant bottling company. In that case, the court stated as follows: "Granting, for the sake of the argument, that, prima facie, inferential negligence will be imputed to the person who sold the bottle to plaintiff's brother, or to the brother himself, the inference is completely rebutted when it affirmatively appears, as it does here, that neither was at fault, that neither handled the bottle improperly or did anything to change the condition from that in which it was when received. Since for every effect there is a cause, where negligence exists some one must have been the responsible author. If he can be found, it is right that he should pay the penalty. The bottle exploded. Inferentially some one was negligent. It was not Cook, the last vendor of the bottle, nor the plaintiff's brother, nor the plaintiff, nor yet Barnett, because they all stand exonerated by direct or circumstantial evidence of their freedom from fault. But the inference of negligence remains, and some one is prima facie to blame. By a process of elimination we get back to the manufacturer who set the dangerous agency in motion, and upon whom the blame ought inferentially to be fastened. It is certainly no hardship to require at the manufacturer's hand an explanation of the occurrence, that the jury may say whether it, like the other persons who handled the bottle, has been exonerated. If a manufacturer should sell to a jobber a gun, and, after passing through the hands successively of the wholesaler and retailer, it finally reaches the marksman, and explodes in his hands while being used in the ordinary and usual manner, and injury results, it is plain that there was a defect in the gun. Somebody ought to be responsible. Concede that inferentially it could be said that the marksman must have done something to the weapon to cause it to explode, if he disproves this, and the retailer, the whole-

saler, and the jobber all in turn show that they kept and handled the gun in the usual way, and did nothing to change its condition, the inference of negligence would be shifted back upon the manufacturer, who put the weapon of destruction in circulation with his indorsement that, when used in the ordinary and usual manner, no harm would come to him who used it. In such a case it would be no answer, when the maxim that the thing spoke for itself is invoked, to say that when the injury resulted, the thing was not in the possession, power, or control of the manufacturer."

In that case it was held that after the elimination of all causal connection between the explosion of the bottle and some act not attributable to the defendant bottling company which put the bottle on the market, the doctrine of res ipsa loquitur applied, and the jury was authorized to find that the explosion of the bottle was due to the defendant's negligence. While in that case it may have appeared conclusively and without contradiction from the evidence that the explosion of the bottle which damaged the plaintiff was not caused by any act not attributable to the defendant, the elimination of any causal connection between the occurrence or accident and some act not attributable to the defendant involved a conclusion of fact under the evidence. As such elimination is made by a conclusion of fact from the evidence, it would seem to be immaterial whether such elimination of a causal connection is made by uncontradicted and undisputed evidence which demands the inference that no causal connection existed between the occurrence or accident and some act not attributable to the defendant, or is made by the jury from conflicting evidence, or where the evidence does not demand a finding by the jury that some cause or act not attributable to the defendant caused the occurrence or accident. The mere fact that there may be circumstances from which it might be inferred that some external cause other than some act of the defendant produced the accident, is not sufficient to prevent the application by the jury of the doctrine of res ipsa loquitur against the defendant. It is a question of fact for the jury, unless the evidence is conclusive, whether any external cause other than an act of the defendant caused the accident. If the jury should conclude from the evidence, or from the lack of evidence, that no external cause produced the accident, then, upon the application of the doctrine of res ipsa loquitur, the jury would be authorized to

infer negligence on the part of the defendant, provided the accident was of a kind which does not ordinarily happen without negligence.

The evidence in this case does not establish conclusively as a matter of law that the food which the plaintiff had partaken of became contaminated and unwholesome before the can was opened. There is evidence that the sausage was thoroughly cooked before the defendant put in on the market. There is evidence that a person other than the plaintiff purchased some of the sausage and ate it on the day the can was opened, and it made him sick. There is also evidence that the dealer from whom the plaintiff obtained the sausage had handled such sausage before, had never kept it under refrigeration, and had eaten it and it had never made him sick. It is therefore by no means conclusive that the sausage became unwholesome or contaminated or poisonous after the can was opened, or if it became so after the can was opened that it became so solely from causes operating upon it after the can was opened. The evidence at best is that it is possible the sausage may have become contaminated by lack of refrigeration, or from some other cause after the can was opened. It is inferable that some condition of the sausage before the can was opened, or something in the can before it was opened, was a contributing cause of its unwholesome condition. The evidence therefore does not demand the inference that the food which the plaintiff ate and which came out of this can became poisoned or contaminated during the five-day period between the opening of the can and the eating of the sausage by the plaintiff, and became so as a result of some external cause not attributable to the defendant who canned the sausage and put it on the market. The jury therefore were authorized to reject the conclusion that the food had become contaminated or poisoned from some external cause not attributable to the defendant, and to find that no cause other than the negligence of the defendant who prepared and canned the sausage was the cause of its unwholesome and deleterious condition, unless the evidence demanded the inference that the condition of the sausage was not caused by the defendant's negligence.

The elaborate routine in the manufacture of the "sausage in oil," which the defendant canned and put out, afforded possible sources for contamination of this kind of food. The expert testi-

mony of the defendant's witnesses, including chemists, biologists etc., was highly technical, and to a large extent opinionative as respected whether or not the sausage could have become contaminated from bacteria or from poisonous chemical compounds produced under the process used in the treatment of the sausage by the defendant. There was evidence that a poisonous chemical compound was produced, or could have been produced, after the sausage had been canned, but not in sufficient quantity, in the opinion of the witnesses, to be harmful or to render the sausage poisonous for human consumption. All such evidence was in the control of the defendant and produced by it. The jury was not bound to accept it, however convincing it might appear, as conclusive proof that in the process of the manufacturer of the sausage and canning it and putting it upon the market, the defendant was not negligent, or that some act of the defendant, or something in the process of the manufacture of the sausage and the canning of the sausage, did not contribute to or cause the poisonous and deleterious character of the sausage. There was evidence that after the can in question was opened there were found on the sides and in the bottom galvanized pied spots, and solder lead was found in the bottom of the can, and that the witness, who was the dealer, had never found such pied places in any other can of sausage.

The jury therefore were authorized to conclude that the sausage did not become contaminated or poisoned from some external cause not attributable to the defendant. The evidence did not demand the inference as a matter of law that the defendant was not negligent. The jury were authorized to apply the doctrine of res ipsa loquitur and to infer that the deleterious and unwholesome character of the food was caused by the negligence of the defendant, and that this negligence was the cause of the plaintiff's injury. *Payne* v. *Rome Coca-Cola Bottling Co.,* 10 *Ga. App.* 762 (73 S. E. 1087) ; *Atlanta Coca-Cola Bottling Co.* v. *Danneman,* 25 *Ga. App.* 43 (102 S. E. 542) ; *McPherson* v. *Capuano & Co.,* 31 *Ga. App.* 82 (121 S. E. 580) ; 53 A. L. R. 1494 et seq. note.

In *Donaldson* v. *Great Atlantic & Pacific Tea Co.,* 186 *Ga.* 870 (199 S. E. 213), the Supreme Court held that a plaintiff who was made sick by eating unwholesome food could sustain his action either by proof of negligence as a matter of fact, or by showing negligence as a matter of law by establishing a breach of the statutory

duty imposed on the seller by the pure-food law. The court held that the seller of the food in effect guaranteed its wholesome quality under the terms of the pure-food law, and could be held liable as an insurer. In my opinion the court erred in directing a verdict for the defendant.

*Judgment affirmed. Sutton and Felton, JJ., concur. Stephens, P. J., dissents.*