### 27857. H. J. HEINZ COMPANY *v.* FORTSON.

Decided February 22, 1940. Rehearing denied March 30, 1940.

*A. S. Skelton, Carter, Stewart & Johnson,* for plaintiff in error. *J. H. & Emmett Skelton, Carey Skelton,* contra.

Guerry, J. Mrs. L. A. Fortson brought her action against H. J. Heinz Company, for damages which she alleged were caused from eating a can of cream of tomato soup, prepared and put on the market for sale by the defendant. She alleged that the can contained "impure, tainted, poisonous, unwholesome, and deleterious matter which the defendant had negligently allowed to become

mixed with the contents of the can sold to plaintiff." The defendant admitted the preparation and sale of the can of soup, but denied that it had been negligent in the preparation of the same, and denied any liability to the plaintiff. The plaintiff's evidence was substantially as follows: She opened the can of cream of tomato soup and poured it into a porcelain pan on the stove to heat. She added to it a half-can of water which she drew from the tap, and before it came to a boil she served it to her husband and herself in two bowls. Her husband drank one bowl and she the other. She testified: "Mr. Fortson put some crackers in the soup and a little hot sauce, and I put some in mine. I just added a few oysterette crackers in my soup. . . There was some soup left, and I poured it into a bowl and drank it, and it didn't taste good. It seemed like it scalded me and my mouth began to burn. . . I detected something wrong with it. . . The can of soup appeared to be all right. I didn't detect anything wrong with the first bowl, because I had some crackers in it and it was hot. My tongue began to draw like I had eaten crabapples or something sour." She further testified that after she had finished in the kitchen she went to the living-room where her daughter and husband were, and was immediately very sick and complained to her husband. She was given various home remedies, but during the night she continued to be nauseated and had diarrhea. Sometime during the night her husband also suffered from diarrhea. The next morning the doctor came to see her, and diagnosed her condition as food poisoning. She was sick for several days. Before she ate the soup her digestive system was good, and since that time it has been continuously deranged. There was nothing unusual about the appearance of the can of soup, nor was there anything in its contents at the time of opening, as to taste, smell, or outward appearance, to denote that it was unfit for use.

The defendant introduced evidence as to the manner in which this soup was prepared, going into detail as to the selection and preparation of tomatoes that were used, the selection and preparation of the cream, the way in which the soup was prepared for market, the time it was cooked, and the temperature to which it was subjected. There was testimony that it would be impossible for bacteria to live in a can subjected to such treatment, and that the methods used and the care taken in the preparation of this can

were even better than those ordinarily used and accepted as the standard of care required by manufacturers of such products generally. This evidence for the defendant was not contraverted in any way by any of the testimony. The jury returned a verdict for $1200 in favor of the plaintiff. The defendant excepted to the overruling of its motion for new trial.

In considering this evidence it will be borne in mind that any recovery by the plaintiff is based on the negligence of the defendant, which was that it allowed unfit and unwholesome products to be placed in its can, and that the plaintiff was injured as a result thereof. She showed that she was made sick, and that before the time she ate the soup she was normal and her digestive system was all right. Her sickness was diagnosed as food poisoning. From the surrounding facts it might be inferred that the bowl of soup caused this condition, and that because she was normal before this time wholesome food would not have caused her to be sick. There was no direct evidence that the soup contained any impure, unwholesome, or unfit ingredient. Such testimony is circumstantial evidence which may or may not support a theory as to the cause of the sickness. The Code, § 38-123, lays down the rule to be applied to such facts in this State: "In arriving at a verdict, the jury, from facts proved, and sometimes from the absence of counter evidence, may infer the existence of other facts reasonably and logically consequent on those proved." These things must be shown: (1) the soup caused the sickness; (2) the soup was unwholesome and harmful; (3) the unwholesome condition was the result of the defendant's negligence. Was the soup alone the cause of the sickness? This soup was not eaten directly from the can. It had added to it a half-can of water, a few crackers, and some "hot sauce." The circumstantial-evidence rule as above stated is usually called the "res ipsa loquitur" doctrine. In the usual course of things a person in a normally healthy condition will not be made sick by eating cream of tomato soup. Where circumstances are relied on "which speak for themselves," they should speak clearly and unambiguously. If two equally consistent theories are supported by the evidence it can not be said that the evidence preponderates to the one rather than to the other. Judge Powell in *Georgia Railway & Electric Co.* v. *Harris,* 1 *Ga. App.* 714 (57 S. E. 1076), laid down the true rule to be applied in cases of this character: "Where

a plaintiff in a civil case supports his action solely by circumstantial evidence, before he is authorized to have a verdict in his favor the testimony must be such as to reasonably establish the theory relied upon, and to *preponderate* to that theory, rather than to any other reasonable hypothesis." (Italics ours.) The plaintiff was seeking to show by circumstances that she was made sick by eating unfit and unwholesome food. Was the jury authorized to say that, because the soup alone caused the sickness, the sickness was because the soup was unwholesome and unfit for food? Conceding, but not deciding, that the evidence was sufficient to show that the soup, and not the water and not the crackers and not the hot sauce which were added thereto before it was consumed by the plaintiff, caused the sickness (and it may be interesting to compare in this connection *Floyd* v. *Swift,* 59 *Ga. App.* 154, 200 S. E. 531), and that the soup was unwholesome and unfit for food, we think the evidence was insufficient, for another reason, to support the verdict. Conceding that the plaintiff was made ill by unwholesome food prepared and put on the market by the defendant, and that this fact was sufficient to support an inference that the defendant was negligent in its preparation, because food of this character carefully prepared does not ordinarily cause a normally healthy person to become sick, we think this presumption was rebutted by the defendant's evidence.

While a manufacturer is not an insurer of his product (*Armour* v. *Miller,* 39 *Ga. App.* 228 (2), 147 S. E. 184), yet an inference of negligence may arise against one who owned, controlled, and manufactured such a product, when its original state has not been changed since it came into the possession of the injured party. If the injured party can show that neither he nor any one else has done anything which would change the condition of the thing causing the damage, and the damage is of a nature that would not ordinarily or usually occur except where some one has been negligent, a jury may be authorized to find that there is a logical connection between the injury and the manner in which the thing or article was prepared. In 45 C. J. 1298, § 857, it is said: "In those cases in which the doctrine of res ipsa loquitur applies and an inference of defendant's negligence is permissible from the mere happening of the accident, or where a presumption of negligence results from the admitted or proven acts of defendant, the question

whether defendant's explanatory evidence outweighs such inference or presumption is one of fact for the jury where the explanatory evidence is itself *contradictory* or of such a character as to justify different inferences as to defendant's exercise of due care, . . but, where the possible inference of negligence is clearly overcome by undisputed evidence to the contrary, the case must be withdrawn from the jury." (Italics ours.) This principle was inferentially recognized by Judge Jenkins in *Atlanta Coca-Cola Bottling Co.* v. *Danneman*, 25 *Ga. App.* 43 (3) (102 S. E. 542). In that case the suit was predicated on the explosion of a bottle of coca-cola which had been put up by the defendant. It may be well to call attention to the fact that the explosion of the bottle was shown by direct evidence, and not by circumstantial evidence, as is relied on in the instant case to show the alleged fact, to wit, sickness caused by eating unwholesome food. The defendant attempted to show that it had used all due diligence in preparing and processing such beverage "in that the bottle had been skillfully and properly charged in accordance with the most approved and scientific process, and that the bottle furnished to the plaintiff did not disclose any inherent defect or weakness, and had been purchased as a sound and suitable article from a reputable dealer, but where the evidence of the defendant entirely fails to thus account for the particular bottle causing the accident, and on the contrary it appears that the bottle had not been thus purchased by the defendant from a reputable dealer, and was in fact a refilled bottle originally purchased by some other bottling concern from persons unknown to the defendant, then, under the particular facts as thus disclosed, it can not be said that the defense sought to be interposed has been established." In *Macon Coca-Cola Bottling Co.* v. *Crane*, 55 *Ga. App.* 573 (190 S. E. 879), this court recognized this principle. After having decided that the proved facts were sufficient to authorize an inference of negligence against the defendant which caused the explosion of a bottle, the court said: "The jury would next consider whether the defendant had exculpated itself by showing freedom from negligence, or that the injury was the result of vis major or causes for which it was not responsible." The court then discussed the evidence of the defendant on that issue, and said that "the jury could reasonably have inferred that the plaintiff had been injured by the explosion of a bottle which had been filled

and carbonated at a time when the automatic device, so called, was clogged, and when an excess of gas was introduced with water into the bottle, or that the bottle was weak and insufficient to withstand a normal and proper pressure," the record having failed to show any inspection of the device to determine whether it was clogged or not.

We think the uncontradicted evidence for the defendant in this case demanded a finding by the jury that it exercised due care in the handling and preparation of its products, which methods were equal or superior to those usually and commonly accepted as meeting all requirements to insure wholesome and proper food. If the defendant showed itself to be free from negligence, it was not incumbent on it to show what was the cause of the damage. Unless the defendant's negligence was itself the cause of the injury, its failure to show what was the cause would not create liability against it. As was said in *Slaughter* v. *Atlanta Coca-Cola Bottling Co.*, 48 *Ga. App.* 327 (172 S. E. 723) : "If the defendant was not negligent and did exercise ordinary care, and any foreign substance got into the bottle notwithstanding ordinary care, that would be what the law designates as an unavoidable accident, for the occurrence of which the defendant would not be liable." This principle is not new in this State. Beginning with *Gainesville, Jefferson & Southern R. Co.* v. *Edmondson,* 101 *Ga.* 747 (29 S. E. 213), which was a case against the railroad company for negligently setting fire, it was held in effect that where the plaintiff relied entirely upon circumstances to make out his case, and in that case the plaintiff established his claim by proof of circumstances which would have supported an inference and a verdict that the defendant's negligence caused the fire, and thus placed the burden on the defendant of rebutting this inference, yet the defendant carried this burden when it showed by uncontradicted evidence that it had complied with the duties required of it. In *Southern Ry. Co.* v. *Pace,* 114 *Ga.* 712 (40 S. E. 723), it was said: "The evidence offered to establish the fact that the fire was communicated to the property of the plaintiff from an engine of the defendant was entirely circumstantial, but was of such a character as to authorize a finding that the fire was so communicated. This fact having been established, a presumption of negligence arose against the company, and the controlling question in the present case is whether

this presumption was rebutted. The uncontradicted evidence of the defendant showed that the engine from which the sparks were emitted which caused the fire was equipped with the latest improved spark-arrester, which was in good order on the date at which the fire occurred, that the engine was in all respects also in good order on that date, and that it was properly handled by the engineer in charge. Under the rulings of this court in *Gainesville &c. Co.* v. *Edmondson,* supra, and *Southern Railway Co.* v. *Myers,* 108 *Ga.* 165 (33 S. E. 917), the evidence of the defendant was sufficient to completely rebut the presumption of negligence; and therefore a verdict in favor of the plaintiff was contrary to the evidence, and a new trial should have been granted for this reason." See also *Atlantic Coast Line R. Co.* v. *McElmurray,* 12 *Ga. App.* 233, 235 (77 S. E. 2), and cit. A plaintiff may show that he has properly addressed, stamped, and placed in the mail a letter to a named person. Nothing else appearing, the law will presume or infer from these circumstances that it was received in due course. This presumption, however, will give way to uncontradicted evidence that the letter was never in fact received. In this connection see *Rawleigh Medical Co.* v. *Burney,* 25 *Ga. App.* 20 (102 S. E. 358); *Strauss* v. *Pearlman,* 15 *Ga. App.* 86 (82 S. E. 578); *Parker* v. *Southern Ruralist Co.,* 15 *Ga. App.* 334 (83 S. E. 158); *Cassel* v. *Randall,* 10 *Ga. App.* 587 (73 S. E. 858); *Hamilton* v. *Stewart,* 108 *Ga.* 472 (34 S. E. 123).

Conceding, but not deciding, that sufficient evidence was introduced to support an inference of negligence on the part of the defendant, this inference, dependent on circumstances, must give way to the uncontradicted evidence of the defendant in rebuttal, that the care taken and the methods used in the preparation of this soup measured up to what was required and necessary for the protection of the general public. Inferences raised from proved facts will not prevail over direct evidence which rebuts such inferences. It is true that what acts do or do not constitute ordinary care are questions for a jury. It is also true that under the undisputed facts shown by the defendant's evidence in this case no jury was authorized to find that such evidence showed a lack of ordinary care on the defendant's part. Such direct, uncontradicted evidence will prevail over inferences of negligence drawn from proved circumstances in this case. The court erred in overruling the

motion for new trial. Under the view we take it becomes unnecessary to pass on the special assignments of error.

*Judgment reversed. Broyles, C. J., and MacIntyre, J., concur.*

## ON MOTION FOR REHEARING.

Movant insists that, having alleged in his petition "that in said can of soup was a quantity, unknown to the plaintiff, of impure, tainted, poisonous, deleterious, and unwholesome matter which was negligently permitted by the defendant manufacturer to become mixed with the contents of this can," and that "defendant was negligent in permitting said putrid, impure, tainted, deleterious, and unwholesome substance to become an ingredient in said product," and her evidence having been sufficient to show that such allegations were true, she showed a violation of the Code, §§ 42-109, 42-115, 42-9901, and thus showed negligence per se because of a breach of a statutory duty.

This court in *Armour* v. *Miller*, 39 *Ga. App.* 228 (supra), in a petition in almost the identical language used here, said that these sections do not apply under such allegations, and that "the manufacturer is not an insurer of his product, and in an action against him the plaintiff must allege and prove either wilful misconduct or negligence in allowing the product to become unwholesome." This ruling was approved by the Supreme Court in *Armour* v. *Miller*, 169 *Ga.* 201 (149 S. E. 698), where Judge Jenkins said that subsection 5 of § 42-109 of the Code refers to any "added poisonous or other added deleterious ingredient which may render such article injurious to health," that the "use of the word 'added' . . can not be regarded as meaningless," and that "it was intended to provide that any article of food manufactured and sold in this country . . should not be deemed to be adulterated merely because it contained a poisonous or deleterious ingredient, . . but that all other articles of food, whether simple or compound, were not to be deemed adulterated on account of the presence of a poisonous or deleterious ingredient, unless such ingredient was 'added' to the article of food in question, that is, was an ingredient foreign to its natural or normal constituency." Judge Bell in *Donaldson* v. *Great Atlantic & Pacific Tea Co.*, 186 *Ga.* 870, 879 (199 S. E. 213), expressly stated that nothing there said was contrary to the decision in the *Miller* case, supra. It will be noted that in the *Donaldson* case the provisions of subsection 7,

instead of subsection 5, were being applied by the court in respect to allegations of negligence per se. The court said: "In a suit for damages against a seller of unwholesome food by the use of which the plaintiff is injured, it is still necessary to prove that the defendant *either* knew of the unwholesome condition of the food or was guilty of negligence in the transaction," and that the provisions of the Code, § 105-1101, were applicable. The effect of the *Donaldson* decision was to hold that it being expressly made unlawful to sell decomposed liver, under subsection 7, supra, such act was the violation of a criminal statute, and was negligence per se, and a cause of action was supported upon proof thereof, without any further proof of negligence. The provisions of subsection 5 do not make a manufacturer guilty merely by proving that such article of food contained deleterious and unwholesome ingredients, unless it is shown that they were added and were foreign thereto. Negligence per se was not involved either under the pleadings or the evidence in this case, and we have fully considered the case as to the negligence alleged.

*Rehearing denied. Broyles, C. J., and MacIntyre, J., concur.*