33021.    BRASWELL *v.* BLACKWELL.

Decided May 12, 1950.

*Richard M. Maxwell, T. J. Lewis Jr.,* for plaintiff.
*Fine & Efurd,* for defendant.

GARDNER, J. It is elementary that all pleadings must be construed most strongly against the pleader, and particularly is this true in hearings on general demurrer. The defendant points out, in the argument, that when the pleadings are broken down, that the defects pleaded are defects in reference to the first incline of the roller coaster, whereas the defect which allegedly caused the injury in the instant case was, if any defect there was, on the second incline. The defendant asks us to bear in mind that the roller-coaster cars are pulled up the first incline by motor, then released and the cars then proceed by gravity from the highest point around to the lowest point, where the cars are brought to a stop; that if the defects as alleged in the petition did in fact exist, still no cause of action would lie to the plain-

tiff in that her injury was sustained after the roller-coaster cars had left the first incline, the defendant arguing that the plaintiff's petition alleges defects only on the first incline. Let us analyze the petition: It is alleged that the three connecting cars of the roller coaster, the plaintiff riding in the last car, reached near the top of the first long incline, the two first cars reaching the top, but the last car, in which the plaintiff was riding, struck defective material in the tracks, causing the car to buckle and resulting in the plaintiff being injured. To clarify our interpretation of this portion of the petition, we quote two divisions of paragraph 4, as follows:

"(l) That after the roller-coaster cars had been carried up the incline to a point near the top the cars stopped; and there are metal projections under said cars which struck the blocks above described and kept the cars from rolling back down the incline. That the entire weight of the crowded cars was thrown against said blocks by means of the metal projections under the cars which contact the said blocks causing them in their rotten condition, as a result of having been exposed to the weather, to splinter and to get out of alignment so as to block the path of the metal projections of the cars behind.

"(m) That as the motor which operated the conveyor chain was again started, the conveyor chain was drawn tight in order to pull the said cars on up the incline and the metal projections under the on-coming cars struck the blocks which had been splintered by the weight of the preceding cars and this knocked the blocks onto the tracks causing the wheels of the last car, as well as the metal projections, to strike said blocks causing the car to buckle upward with such force that it threw petitioner up out of her seat.

"(n) That the roller coaster hitting the said block, combined with the fact that there were three roller-coaster cars coupled together and that they were fully loaded, created great tension and strain on the last car of the roller coaster because it was the only car which was still connected to the conveyor chain going up the incline at approximately a 75 degree angle, whereas the preceding cars had passed over the top of the first loop and were proceeding down at about the same angle.

"(o) That the timbers which make up the track near the

top of said first loop are rotten and warped out of shape and the metal strip over which the small wheels on the bottom of the roller-coaster cars are supposed to run are rusty, bent and twisted and do not fit securely, or closely, to the rotten timbers to which they are attached, and this combined with the fact that the small wheels which are about three inches in diameter which are on the bottom side of the roller coaster are old and worn so that they do not properly fit the metal strips over which they are intended to roll.

"(p)  That the links in the conveyor chain are old and defective, having been exposed to the weather and the gears to which said conveyor chain is attached are old, rusty and bent, causing the chain to jerk and to run unevenly on said gear.

"(q)  That the motor to which the conveyor chain was attached is defective in that it is old and worn and does not run smoothly.

"(r)  That as a result of the aforementioned rundown, dilapidated condition of said cars and track and conveyor chain and motor roller-coaster cars and said overcrowding and hooking together of too many cars, the said rear car did, upon striking the aforementioned block, throw petitioner out of her seat and then as the conveyor chain forced the car free from said defective block, which was also out of place on the track, and as the last car was released by the conveyor chain and pulled forward by the downward motion of the preceding cars, and being under the aforementioned terrific strain as the result of old, worn and faulty couplings, and the hooking of too many cars together, and having same overcrowded, did cause the last car to jerk back, down and forward with such tremendous force until it threw petitioner back into the hard seat, breaking her back."

Subdivision (d) of paragraph 7 definitely indicates that the car in which the plaintiff was riding was on the first incline, in the following language:  "(1)  That defendant was negligent in hooking too many cars together and this resulted in creating terrific strain on the last car on the seventy-five degree incline which was still hooked to the conveyor chain, whereas the preceding cars, having been released from the conveyor chain, were descending the other side of the top of the first loop."

While we note the language of paragraph 4 of the petition "at the second dip" the excerpts from the paragraphs quoted above clearly indicate that the alleged injury occurred a few feet before reaching the peak of the first incline. The petition further states in paragraph 6: "That petitioner at the time of the injury was not standing up in the car but was sitting down in the seat and was holding onto the iron rail in front of her."

We have read *Carlyle* v. *Goettee*, 64 *Ga. App.* 360 (13 S. E. 2d, 206), cited by counsel for both parties. While the facts in that case are different from those in the instant case, and do not impress us greatly as to affirming or reversing the sustaining of the general demurrer and dismissing the petition in the instant case, we might quote headnote (4): "Whether a petition is sufficiently definite and particular in allegations of fact to withstand demurrer must be determined mainly upon the facts of each case, save that the test common to all cases is that it is necessary that the allegations set forth only the ultimate, material facts to be proved to sustain the cause of action, without any requirement of allegation of evidentiary facts."

*Armour & Company* v. *Miller*, 39 *Ga. App.* 228, 229, and *Hudgins* v. *Coca-Cola Bottling Co.*, 122 *Ga.* 695 (4), are true in principle, but not applicable to the facts of the instant case. The *Hudgins* case, headnote 1, states in part: "In an action founded upon negligence, mere general averments of negligence are sufficient as against a general demurrer." Headnote 4 of the same opinion, quoted by the defendant, reads: "General averments of negligence can not be aided by the maxim res ipsa loquitur. This maxim can not be invoked to aid a defective pleading." While the rule as to res ipsa loquitur is true as an abstract principle of law as to evidence, we do not find that the pleadings in the present case are defective so as to warrant affirming the sustaining of the general demurrer to the petition. We see no reason for citing or analyzing the many decisions cited and quoted from in the brief of the plaintiff, since we are holding that the petition sets forth a cause of action.

The court erred in sustaining the general demurrer to the petition.

*Judgment reversed. MacIntyre, P.J., and Townsend, J., concur.*